**UNITED STATES of America**

v.

**RMI COMPANY et al.**

**NL INDUSTRIES, INC., Petitioner,**

v.

**Hon. Daniel J. SNYDER, Jr., United States District Judge for the Western District of Pennsylvania, Respondent.**

No. 78–2691.

United States Court of Appeals, Third Circuit.

Argued March 20, 1979.

Decided May 2, 1979.

**1184**

John H. Shenefield, Asst. Atty. Gen., Mark Manner (argued), Barry Grossman, William D. Coston, Attys., Dept. of Justice, Washington, D. C., for respondent; Robert W. Wilder, Patricia G. Chick, Attys., Dept. of Justice, Washington, D. C., of counsel.

Sanford M. Litvack (argued), John H. Wilkinson, Donovan, Leisure, Newton & Irvine, New York City, Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for NL Industries, Inc.

Haliburton Fales, 2nd, White & Case, New York City, Breed, Abbott & Morgan, New York City, James P. Markle, Pittsburgh, Pa., for defendant RMI.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and MARKEY,* Chief Judge of the Court of Customs and Patent Appeals.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

We here consider a petition by NL Industries, Inc. (NL) for a writ of mandamus to compel the nominal respondent, Daniel J. Snyder, Jr., District Judge, to consider the merits of NL's motion for a protective order respecting certain documents. The documents were furnished to a grand jury by NL, pursuant to a subpoena. When the grand jury indicted several parties, not including NL, the government proposed to disclose to the defendants all documents produced before it. NL then moved for a protective order to prevent or limit disclosure of 54 documents which had been subpoenaed from it. Without examining the documents or considering the merits of NL's objections to disclosure, the district court denied the motion. This petition followed. We conclude that the district court should have examined the documents and considered the merits of NL's objections, and we direct that he do so.

## I. FACTS AND PROCEEDINGS IN THE DISTRICT COURT

Between December 1976 and September 1978 a grand jury in the Western District of Pennsylvania investigated alleged price fixing in the titanium metals industry. In the course of that investigation the grand jury subpoenaed documents from a number of corporations. A subpoena duces tecum to NL requested, among other things,

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

All documents which relate or refer to the sale, acquisition, merger or consolidation of any interest in any company engaged in the production or sale of titanium products, or any proposed or contemplated sale, acquisition, merger or consolidation of such an interest.

Although the subpoena was rather broad when considered in light of possible relevance to a price-fixing investigation, NL complied, furnishing thousands of papers, including documents dealing with its 50% joint ownership, with Allegheny Ludlum Steel Co., of a titanium producer, Titanium Metals Corporation of America (TMCA).

On September 28, 1978, the grand jury indicted four corporations and five individuals for price fixing in violation of the Sherman Act, and named TMCA as an unindicted co-conspirator. NL was neither indicted nor named as a co-conspirator. Shortly after the return of the indictment, several defendants moved pursuant to Fed.R. Crim.P. 16(a)(1)(C) for discovery of certain documents. The response of the government was to move on November 1, 1978, for the entry of an order granting each defendant access to all grand jury documents. The government notified those firms, including NL, who had responded to subpoenas duces tecum that it now proposed to make all the grand jury documents available to the defendants. In response to the government's notice, NL objected to disclosure of certain documents. It pointed out that it is engaged in producing steel products, as are several of the defendants, and that it would be prejudiced by the unprotected disclosure of the documents, containing as they do highly confidential and proprietary business information concerning the financial affairs of NL and TMCA, as well as business policy decisions by top executives of both companies. NL moved for a protective order.

At a pretrial hearing on November 29, 1978, the district court entertained various motions regarding the requested grand jury documents. RMI Company, one of the defendants, proposed an order that would place all grand jury documents in a document depository, available to defense counsel, defense experts, and any party or its officers or employees required to work on the litigation. NL sought a more restrictive protective order which would have limited the disclosure of certain critical documents solely to defense counsel and outside experts employed by defense counsel, at least absent a showing of materiality to the defense. The district court ruled against NL, which then filed a motion for reconsideration, restricting its application to 54 specific documents out of the thousands it had furnished. The court acknowledged that it might be naive to assume that defendants could so isolate confidential information that they would not, as competitors of NL, gain commercial advantage through the proposed disclosure. Nevertheless, on December 14, 1978, without examining the 54 documents, or making any determination of their materiality pursuant to Rule 16(a)(1)(C), the court denied NL's motion and entered an order allowing access to all grand jury documents by defendants and their counsel "solely for the purposes of prosecuting or defending against the criminal charge in this action . . . [not] for any commercial advantage." The NL petition for mandamus followed.

## II. PROPRIETY OF MANDAMUS RELIEF

Under the All Writs Act, 28 U.S.C. § 1651, all federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The statute is conjunctive; the writ must be both in aid of jurisdiction and agreeable to the law governing the use of prerogative writs. Since this court does not have a general original jurisdiction, we can issue a writ of mandamus only in aid of some present or potential exercise of appellate jurisdiction. *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). While that rule does not require that the action complained of in the mandamus petition be itself an appealable order, *see, e. g., id.; United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872 (3d Cir.

1976), the action must nevertheless involve subject matter to which our appellate jurisdiction could in some manner, at some time, attach. *See, e. g., United States v. Helstoski,* 576 F.2d 511, 516 (3d Cir.), *cert. granted,* 439 U.S. 1045, 99 S.Ct. 719, 58 L.Ed.2d 704 (1978); *In re United States,* 348 F.2d 624, 625 (1st Cir. 1965). Thus we can consider the petition only after first identifying the way in which the action complained of affects some appellate jurisdiction, present or future.[1]

In the pending criminal case the district court's grant of defendants' Rule 16 request could not be reviewed at the behest of the parties even after a conviction. The government proposed the disclosure of all grand jury documents, and thus would not be aggrieved. The defendants were being tendered even greater discovery than they had originally sought, and thus could not press the ruling as a ground for reversal of a conviction.[2] Our potential appellate jurisdiction over the judgment of sentence, 28 U.S.C. § 1291, and over other aspects of the criminal proceedings, 18 U.S.C. § 3731, is therefore irrelevant. We can only entertain the petition if NL's own interest in the ruling is somehow within our potential appellate jurisdiction.

■ We conclude that NL meets this requirement. In *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), the Court held that the owner of exhibits could intervene in a criminal grand jury proceeding to object to their disclosure on a ground of privilege, even when the exhibits were in the possession of a third party. Moreover, the Court held that the order denying intervention and privilege was collaterally final for purposes of appeal. *See also Gravel v. United States,* 408 U.S. 606, 608 n.1, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). The *Perlman* rule has also been applied in a trial, rather than grand jury context, to allow an intervention and appeal to challenge the production of subpoenaed documents. *See United States v. Nixon,* 418 U.S. 683, 688, 690–92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). We have applied the same principle in permitting intervention for the assertion of claims of privilege when subpoenas are addressed to third parties. *In re Grand Jury Investigation (Intervenor A),* 587 F.2d 589 (3d Cir. 1978); *In re Grand Jury Proceedings (Cianfrani),* 563 F.2d 577 (3d Cir. 1977); *In the Matter of Grand Jury Impaneled Jan. 21, 1975 (Freedman),* 541 F.2d 373 (3d Cir. 1976). Thus it is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders, and if protection is denied, seek immediate appellate review. In this instance, while NL did not file a formal motion for intervention, it was served with notice of the government's motion to disclose grand jury documents, and

---

1. The Second Circuit has taken the position that § 1651 authorizes a "supervisory" review of district court actions which could never be reviewed on appeal. *See, e. g., United States v. Weinstein,* 511 F.2d 622, 626–27 (2d Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975). *United States v. Lasker,* 481 F.2d 229, 235–36 & n.3 (2d Cir. 1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); *United States v. Dooling,* 406 F.2d 192, 198–99 (2d Cir.), *cert. denied,* 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969). *But see United States v. DiStefano,* 464 F.2d 845 (2d Cir. 1975). We do not find that court's expansive reading of § 1651 persuasive, and do not rely on it, despite the modest approval which the Second Circuit cases have achieved from one commentator. 9 *Moore's Federal Practice* ¶ 110.28, at 305–06 (1975). *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), which is often cited as authority for "supervisory" mandamus, *see, e. g., Lasker, supra,* at 235, is not apposite since it involved an order which would have been reviewable after final hearing. No case in the Supreme Court that we know of involved the exercise of the § 1651 mandamus power where the court lacked some potential appellate jurisdiction.

2. This case is thus distinguishable from the instances of mandamus cited by petitioner NL, all of which issued at the behest of one of the parties who, presumably, could have asserted the same claims on appeal. *See, e. g., Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971); *Hartley Pen Company v. United States District Court,* 287 F.2d 324 (9th Cir. 1961).

its participation was invited by the court. Like Mr. Nixon in *United States v. Nixon, supra,* NL appeared specially in the proceedings and was treated, *de facto,* as an intervenor. Moreover, while the *Nixon* case concerned an intervention to contest a Fed. R.Crim.P. 17(c) subpoena, there is no discernible difference in effect between the enforcement of a Rule 17(c) subpoena and the grant of a Rule 16 discovery request. We conclude, therefore, that NL had standing to intervene, that it did in fact intervene, and that the denial of its application for a protective order resulted in a ruling over which we have potential appellate jurisdiction.

That does not end the inquiry, however, for the presence of potential appellate jurisdiction may implicate the oft-repeated dictum that a petition for mandamus will not ordinarily be granted where an adequate appellate remedy otherwise exists. *E. g., Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). The cases announcing that rule, however, are predicated upon the assumption that mandamus should not, except in extraordinary circumstances, be used as a device for avoiding the policies of the final judgment rule. *See e. g., Will v. United States,* 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). But where, as here, the order which is the subject matter of the petition is, under the governing case law, reviewable as collaterally final, there are no finality considerations militating against treating a petition for mandamus as the equivalent of a notice of appeal. Several courts have done so. *E. g., United States v. Green,* 162 U.S.

App.D.C. 402, 404, 499 F.2d 538, 540 n.5 (1974) (per curiam); *National Org. For Reform of Marijuana Laws v. Ingersoll,* 162 U.S.App.D.C. 67, 69, 497 F.2d 654, 656 n.3 (1974); *Strauss v. Smith,* 417 F.2d 132, 133 (7th Cir. 1969). If the order being challenged could have been the subject of a § 1291 appeal, to consider a mandamus petition instead of such an appeal simply involves a difference in the scope of review under the appellate and mandamus remedies. In this case, however, there are no significant differences in scope of review, because the only relief sought is an order directing the district court to consider and rule on the merits of NL's request for a protective order covering the 54 documents in issue. We do not believe that our consideration of that request would differ in any significant degree had NL proceeded by appeal rather than by mandamus. We therefore turn to the merits of NL's request for a protective order.

### III. THE MERITS

This case requires us to consider the interplay of two provisions of the Federal Rules of Criminal Procedure. Rule 16(a)(1)(C) provides the standards for a defendant's discovery of documents and tangible objects which are within the government's control.[3] Rule 6(e), on the other hand, requires that a veil of secrecy generally apply to grand jury proceedings.[4] The question posed in this case is whether, when documents are sought which were first obtained during a grand jury investigation, the secrecy policies of Rule 6(e) have any

---

3. Rule 16(a)(1)(C) provides:

   Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies of portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

4. Rule 6(e) provides, in pertinent part:

   Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

impact on discovery proceedings under Rule 16(a)(1)(C).

Rule 16(a)(1)(C) permits a defendant to discover documents in the government's possession where they (1) "are material to the preparation of [the] defense"; or (2) "are intended for use by the government as evidence in chief at the trial"; or (3) "were obtained from or belong to the defendant." There has been no argument that reason (2) applies, and reason (3) is plainly inapposite. As for reason (1), the defendants never made any showing to the trial court that the 54 documents whose content NL wishes to protect are material to their defense. Nor did the trial judge do anything independently to satisfy himself of the documents' materiality. Facially, then, there would seem to be a violation of the materiality command of Rule 16(a)(1)(C).

Were this a case where the *government* objected to the discovery of documents on the ground that there was no showing of their materiality, a court would not hesitate to deny the defendants' Rule 16(a)(1)(C) request. In *United States v. Buckley*, 586 F.2d 498 (5th Cir. 1978), for example, the court rejected a defendant's Rule 16(a)(1)(C) motion, contested by the government, because he had not made a *prima facie* showing of materiality. *Id.* at 506. The court stated:

> Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.

*Id.* (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975)). *See also United States v. Brown*, 562 F.2d 1144, 1152 n.8 (9th Cir. 1977); *United States v. Johnson*, 577 F.2d 1304, 1309 (5th Cir. 1978); *United States v. Orzechowski*, 547 F.2d 978, 984–85 (7th Cir. 1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). In this case, however, the government, which is the usual Rule 16 objector, has raised no materiality objection. NL has pointed to no instance in which a third party has been heard to raise a materiality objection as a basis for denying Rule 16 relief to a defendant. *But cf. United States v. Nixon, supra* (third party intervened to challenge a Rule 17(c) request, in part on relevancy grounds).

Yet, the third party here originally furnished the documents in reliance on the secrecy provisions of Rule 6(e). Plainly, the policies behind Rule 6(e) secrecy are implicated by the pre-trial production of grand jury documents. The secrecy of grand jury proceedings exists, in part, to encourage witnesses to testify without fear of retaliation. *Posey v. United States*, 416 F.2d 545, 557 (5th Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). The maintenance of secrecy is often essential to the protection of complainants and witnesses who appear before grand juries. *See Allen v. United States*, 129 U.S.App. D.C. 61, 65, 390 F.2d 476, 480 (1968). If those policies are not to be needlessly frustrated at the pre-trial stage, it would seem that, at the very least, *someone* should be permitted to insist that the prerequisites of Rule 16 be followed. Where, as here, the government has not chosen to do so (and yet has not stated that it plans to use the documents at trial, thus satisfying a separate and dispositive prerequisite for Rule 16(a)(1)(C) discovery), a third party whose reliance interest in secrecy may be undermined should have standing to be heard in objection to disclosure.

Defendant RMI Company contends that Rule 6 has never been used "as a means for limiting the liberal discovery available under Rule 16." *Brief of Respondent*, at 9. The two rules, RMI asserts, provide *alternative* bases for discovery. Rule 6(e), since it ostensibly applies to *all* parties, imposes a heavier burden to show a "particularized need." *Id.* "Rule 16, on the other hand, limits discovery to defendants in a criminal case, and recognizing the constitutional rights (and particularized need) that all defendants in a criminal action have, employs the more liberalized test of 'materiality.' "

*Id.* But that argument merely suggests that the Rule 16 materiality standard should not be read more stringently than otherwise when it is grand jury documents which are sought. It does not address the possibility that third parties may have standing to insist that "the more liberalized test of 'materiality'" at least be observed.

No case has been called to our attention dealing with a third party's interest in enforcement of Rule 6(e) in the Rule 16 context. In *Douglas Oil Company of California v. Petrol Stops Northwest*, —— U.S. ——, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), however, the Supreme Court treated analogous considerations. There, the plaintiffs, in connection with two antitrust actions they had instituted against Douglas Oil and others, sought to discover under Rule 6(e) the grand jury testimony given by certain Douglas employees in a prior grand jury investigation. Douglas Oil intervened and attempted, without success, to prevent disclosure of the grand jury testimony. On review before the Supreme Court, the plaintiffs argued that Douglas Oil lacked standing to object to disclosure on the ground that it had no particular interest in the policy of grand jury secrecy. In rejecting that contention, the Supreme Court acknowledged Douglas Oil's vital stake in maintaining grand jury secrecy. Permitting Douglas to object to the proposed disclosure, the Court held, was consonant with traditional jurisprudence governing grand jury secrecy. 99 S.Ct. 1672 n.8.

To like effect is *State of Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977), *cited with approval in Douglas Oil Co., supra*, 99 S.Ct. at 1672 n.8, 1673. In *Sarbaugh*, the Antitrust Division of the Justice Department had secured indictments against certain corporate defendants for bid rigging. Following their indictment, the defendants moved successfully under Rule 16(a)(1)(A) to discover the grand jury testimony of some of their present and former employees. Subsequently, the defendants entered pleas of *nolo contendere*. The pleas were accepted, judgments were entered, and sentences were imposed. Soon after, the State of Illinois brought a civil action against the same defendants and sought to discover, under Rule 6(e), whatever documents the Antitrust Division had released to the defendants. The Antitrust Division did not object, but the corporate defendants sought to intervene to forbid disclosure. The district court permitted intervention and denied the state's motion for disclosure. Although the court of appeals reversed the trial court, it agreed that the corporate defendants were properly permitted to intervene. Rule 6(e), under which the state sought disclosure, "seems to contemplate a proceeding of some kind . . . and persons in the situation of the intervenors are likely to be the only ones to object to an order for disclosure. If they are not allowed to appear, the advantages of an adversary proceeding are lost." 552 F.2d at 773. Because the corporate defendants were "defending a civil action," they were held to be "adversely affected by disclosure" and thus entitled to be heard. *Id.*

In the instant case, NL Industries has also come forward with a reason why it would be adversely affected by the disclosure of certain documents to the corporate defendants. To be sure, the documents were sought by the defendants under Rule 16(a)(1)(C), and not under Rule 6(e), because they are to be used in a criminal, not civil, proceeding. But that difference is adequately accounted for in the lower "materiality" threshold of discovery under Rule 16 (as opposed to the "particularized need" standard which has been held applicable to Rule 6(e)). Since the policies of secrecy apply both to criminal trials under Rule 16 and to civil actions under Rule 6, the analysis of the *Douglas Oil* and *Sarbaugh* Courts seems eminently applicable.

Apart from the policies surveyed above, there are additional reasons to permit third parties to be heard in defense of grand jury secrecy at the stage of a Rule 16 motion. To the extent that the grand jury may be considered the creature of the executive branch of government, the government is in actual possession of the docu-

ments and can ordinarily assert their confidentiality. *See In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 90 (3d Cir. 1973). But even when the executive branch loses interest in continued secrecy, other societal interests in the integrity of Rule 6(e) remain. If we were to hold that a witness furnishing documents to a grand jury could not be heard to object to their production under Rule 16, the inevitable effect would be to move the litigation over preservation of confidentiality back to the investigation stage, thus multiplying the instances in which subpoenaed witnesses would resist. In addition, we must bear in mind that apart from Rule 6(e) there are various federal laws aimed at protecting property rights in confidential business information. *E. g.*, 18 U.S.C. § 1905; 5 U.S.C. § 552(b)(1)(A)(4). Of course, these property rights must yield to some extent both to a grand jury's investigations of crime and to a defendant's sixth amendment rights to confrontation and compulsory process. A balance must be struck between these competing interests. If we rule that a third party cannot be heard to object to a Rule 16 disclosure, we will not only encourage resistance at the grand jury investigation stage, but will also preclude the delicate balancing of interests that federal law requires. That, it seems to us, would be undesirable. Grand jury witnesses ought to be able to rely, generally, upon Rule 6(e) secrecy, with the reasonable assurance that matters not material to the government's case or to the defense will not be disclosed in connection with the trial of an indictment. If such disclosure is actually necessary it must of course occur, but only with appropriate safeguards taken in the interest of preserving property rights in confidential business information. If the material is claimed to be confidential, and is in fact immaterial, the secrecy policies of Rule 6(e) ought to prevail.

In this case the court never ruled upon the merits of NL's contentions. No showing of materiality was required, and no determination was made about confidentiality.

## IV. CONCLUSION

Since the district court never ruled on the merits of the NL application, the order of December 14, 1978 must be vacated. Since we assume that the District Judge will treat our disposition as the equivalent of an appeal, and will proceed with a determination of the merits of NL's application, a writ of mandamus need not issue. No costs.