UNITED STATES of America, Plaintiff,

v.

FISCHBACH AND MOORE, INCORPORATED, The Howard P. Foley Company, Lord Electric Company, Inc., Sargent Electric Company, E.C. Ernst, Inc., Tri-City Electric Company, Inc., Joseph J. Rodgers, Paul E. Arbogast, Frederic B. Sargent, Ralph D. Vryenhoek, and James L. Oesterle, Defendants.

Crim. No. 83–98. ·

United States District Court, W.D. Pennsylvania.

Dec. 22, 1983.

---

Hays Gorey, Jr., Gary S. Humble, Mark C. Schechter, Dept. of Justice, Antitrust Div., Washington, D.C., for U.S.

Joseph S. Van Bokkellen, Goldsmith, Goodman, Ball & Van Bokkellen, P.C., Highland, Ind. and Charles Scarlata, Pittsburgh, Pa., for Tri City Elec. Co., Inc.

H. Yale Gutnick, Strassburger, McKenna, Messer, Shilobod & Gutnick, Pittsburgh, Pa., for Joseph J. Rodgers.

Norman H. Seidler, Gordon B. Spivack, Lord, Day & Lord, New York City, and P. Jerome Richey, John P. McComb, Jr., Buchanan & Ingersoll, Pittsburgh, Pa., for Fischbach & Moore, Inc.

Robert F. McDermott, Marianne Corr, Jones, Day, Reavis & Pogue, Washington, D.C. and Robert J. Cindrich, Pittsburgh, Pa., for the Howard P. Foley Co.

Clyde Armstrong, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Paul E. Arbogast.

Melvin Schwartz, Baskin & Sears, P.A., Boca Raton, Fla. and Harold Gondelman, Gondelman, Baxter, McVerry, Smith, Yatch & Trimm, Pittsburgh, Pa., for Frederic B. Sargent and Ralph D. Vryenhoek.

James G. Richmond, Highland, Ind. and Charles Scarlata, Pittsburgh, Pa., for James L. Oesterle.

Jeffrey C. Slade, Paul, Weiss, Rifkind, Wharton & Garrison, New York City and Jon Hogue, Pittsburgh, Pa., for Lord Elec.

Peter F. Gass, Deborah Fabricant, Peter N. Wang, Friedman & Gass, P.C., New York City, for E.C. Ernst, Inc.

## OPINION

COHILL, District Judge.

The defendants in this case were indicted by a federal grand jury and charged with criminal violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. The government allegations charge defendants with conspiracy and bid rigging in connection with electrical contracting work done for United States Steel at its "Western Pennsylvania Works" from 1974 to 1981.[1] Specifically, the government claims that defendants formed a continuing agreement by which they allocated electrical construction projects among themselves, fixed the prices at which these projects were bid, and submitted noncompetitive, collusive bids, or refrained from bidding with relation to the construction projects. The defendants were involved in bidding on over 150 projects during this period.

Before the Court are a number of joint discovery motions made by defendants: 1) Motion for a Bill of Particulars; 2) Motion for Disclosure Regarding Alleged Prior Misconduct or Conviction; 3) Motion to Compel Discovery; 4) Motion for Disclosure of Matters Occurring Before the Grand Jury; 5) Motion to Strike Surplusage; and 6) Motion to Disclose Electronic Surveillance.

### I. Defendants' Motion for a Bill of Particulars

Defendants have moved, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure for a bill of particulars. In support of this motion, defendants argue that they need more information to 1) prepare their defenses, and 2) ascertain whether they may be prosecuted a second time in the future for the offenses presently charged. The defendants claim that the conspiracy alleged by the government covers a seven-year period and over 150 projects, but that the counts of the indictment are so general that defendants are unable to ascertain which projects the government asserts were the subjects of the conspiracy, when the actions took place, or who was involved.

The government, in opposition to this motion, argues that defendants are not entitled to a script of the government's case; that the case is a simple one involving bid rigging; that defendants have received the grand jury testimony of 28 witnesses and numerous documents and exhibits, and that defendants have access to all information necessary to prepare their defenses. The government has also claimed that all jobs bid for during this period are covered by the indictment as subjects of the conspiracy, and that the question of which particular jobs are involved is not relevant.

The defendants are entitled to more information as to the conspiracy and actions with which they are charged; we will therefore grant defendants' motion in part and deny it in part.

■■■ We note at the outset that the granting of a bill of particulars is a matter within the discretion of the trial court. *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927), *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). The purpose of a bill of particulars is to inform the defendant(s) of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise at trial, and to protect against a second prosecution for an inadequately described offense. *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir.1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). *See also, Will v. United States*, 389 U.S. 90, 99, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967); *United States v. Davis*, 582 F.2d 947, 951 (5th Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979).

---

1. The Indictment defines as the "Western Pennsylvania Works" of United States Steel Corporation those plants situated in Western Pennsylvania: Homestead (including the Vandergrift and Saxonburg satellite plants), Edgar Thomson, Duquesne, National, Clairton and Irwin.

It is well established that a bill of particulars is not to be used by the defendant as a discovery tool, *United States v. Litman,* 547 F.Supp. 645, 654 (W.D.Pa. 1982), by which defendants obtain disclosure of every detail of the theory and preparation of the government's case. *United States v. Boffa,* 513 F.Supp. 444, 485 (D.Del.1980). In ascertaining whether a bill of particulars is appropriate, the Court may consider not only the indictment, but also all of the information which has been made available to the defendants; *United States v. Kenny,* 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *United States v. Bloom,* 78 F.R.D. 591, 600–01 (E.D.Pa. 1977); *United States v. Azzarelli Construction Co.,* 459 F.Supp. 146, 151 (E.D. Ill.1978), *aff'd,* 612 F.2d 292 (7th Cir.1979), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *United States v. Barrows,* 122 F.Supp. 324, 325 (D.Del. 1954).

The government has already provided defendants with "relevant portions" of the grand jury testimony of twenty-eight witnesses, relevant grand jury exhibits from related District of Columbia grand jury proceedings, relevant exhibits from the Pittsburgh grand jury proceedings, relevant documents subpoenaed in connection with these proceedings, and documents voluntarily produced to the government. The government has also stated that it will provide to defendants a list of unindicted co-conspirators, as well as transcripts of relevant grand jury testimony of employees within the definition of Fed.R.Crim.P. 16(a)(1)(A).

A significant amount of information has already been made available to defendants. An indictment under the Sherman Act is not required to be detailed or evidentiary in nature, since the basis of a conspiracy charge is "agreement rather than action, and the agreement is usually established by a course of dealing or pattern of conduct and the reasonable inferences to be drawn therefrom." *United States v. Tedesco,* 441 F.Supp. 1336, 1340 (M.D.Pa.1977) (citing *United States v. United States Steel Corp.,* 233 F.Supp. 148, 152 (S.D.N.Y.

1964)). Thus, overt acts need not be alleged in a Sherman Act conspiracy indictment, since the conspiracy itself is the nature of the crime. *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913).

In *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court held that a legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise the defendant of what he must defend against and accurately record the crime for which the individual may be convicted or acquitted to avoid a second jeopardy of the same offense. *Id.* at 763–64, 82 S.Ct. at 1046–47.

Having considered this standard, the arguments of counsel, the indictment itself, and the information already in defendants' possession as well as what the government has promised to supply, we remain concerned with the number of projects bid on over the seven-year period during which the conspiracy allegedly took place. The "Western Pennsylvania Works" (as noted in footnote 1 hereof) comprises a number of plants. Some 150 contracts were bid on. We do not believe that it will unreasonably limit the government's case to require identification of which contracts are alleged to be the subject of the conspiracy to allocate bids among defendants, having bid prices fixed, or for which noncompetitive, collusive and rigged bids were submitted, and/or on which defendants and co-conspirators refrained from bidding pursuant to the alleged conspiracy. (Defendants' Motion for Bill of Particulars, ¶ 6(b)). Disclosure of this information should be sufficient to allow defendants to prepare for trial without "freezing" the government's proof. We will, therefore, grant ¶ 6(b) of the defendants' Motion for a Bill of Particulars, and deny the other requests included in that Motion.

## II. *Defendants' Joint Motion to Compel Discovery*

Defendants have filed a joint motion to compel discovery pursuant to Fed.R.

Crim.P. 16, Local Rule 24, and the Jencks Act, 18 U.S.C. § 3500. These requests are addressed to 1) Statements of Defendants, 2) Documents Material to the Defense and Evidence-in-Chief, 3) Reports of Examinations and Trials, 4) Evidence Favorable to Defendants and *Brady* material, and 5) Statements of Trial Witnesses Pursuant to the Jencks Act.

1) *Statements of Defendants.*

Defendants have moved for a) written or recorded statements of past or present employees of the corporate defendants including verbatim notes of interviews conducted by government representatives; b) transcripts of the grand jury testimony of past or present employees; c) the substance of oral statements by any past or present employee which the government intends to offer into evidence at trial; d) transcripts of grand jury testimony and/or written or recorded statements of any alleged co-conspirators of the defendants; and 3) any written or recorded statements of any individual defendant. With respect to b), defendants claim that the government has given them access to only a portion of many grand jury transcripts of past and present employees, including the testimony of what defendants claim to be seven critical witnesses. Defendants claim that the government has impermissibly redacted transcripts of the testimony of other present or past employees.

■ Pursuant to defendants' motion, the government has responded by agreeing to supply to the appropriate corporate defendants the relevant grand jury testimony of those present or past employees who were in a position to bind the corporation regarding conduct constituting the offense, which testimony falls within the description of Fed.R.Crim.P. 16(a)(1)(A). Defendants have also referred to certain witnesses, present and former employees of various defendants, who testified before the grand jury and whose grand jury transcripts have not yet been produced by the government. They are: Donald Paul, Cal Walker, Clayton Shackleford, James Shannon, Richard Perrott, and Paul Hatton. Defendants are entitled to the *relevant* portions of these

transcripts pursuant to Rule 16(a)(1)(A), and the government will be ordered to produce these portions forthwith. The government has already provided a copy of the grand jury testimony of the only individual defendant who made a statement to the government. Statements made to third parties and not falling within the appropriate limiting definition in Rule 16(a)(1)(A) are not discoverable. *United States v. Heldon*, 479 F.Supp. 316, 322–23 (E.D.Pa. 1979). We will deny defendants' motion to compel production of any verbatim notes of interviews conducted by government representatives, unless those notes, pursuant to Fed.R.Crim.P. 16(a)(1)(A), constitute the substance of oral statements of a defendant which the government intends to offer into evidence at trial, *which statement was given in response to interrogation by a person then known by the defendant to be a government agent.*

■ Defendants have also moved to require production of grand jury testimony and/or the written or recorded statements of any alleged co-conspirators. While some courts have read the mandate of Rule 16 broadly, *see United States v. Thevis*, 84 F.R.D. 47, 55–56 (N.D.Ga.1979), *United States v. Agnello*, 367 F.Supp. 444, 448 (E.D.N.Y.1973), we are of the view that these are statements within the reading of the Jencks Act, 18 U.S.C. § 3500, and not within the purview of Rule 16. *See United States v. Callahan*, 534 F.2d 763 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *United States v. Wolczik*, 480 F.Supp. 1205, 1209 (W.D.Pa.1979). *See also United States v. Walk*, 533 F.2d 417 (9th Cir.1975); *United States v. Feinberg*, 502 F.2d 1180 (7th Cir.1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *United States v. Wilkerson*, 456 F.2d 57 (6th Cir.), *cert. denied*, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972).

### 2) Documents Material to the Defense and Evidence-in-Chief

▆ Pursuant to Fed.R.Crim.P. 16(a)(1)(C), defendants have moved to compel production of documents, books, papers, photographs or tangible objects material to the preparation of the defense or intended for use by the government as evidence-in-chief at trial. Defendants have also moved for production of documents produced to the grand jury or voluntarily to government attorneys in the course of investigations leading to the indictment which are relevant to the matters charged in the indictment. First, defendants refer to certain file drawers from which defendants' attorneys were barred. These drawers clearly should be examined by the government for any documents material to the preparation of the defense or intended for use in the government's case-in-chief, and material subject to the Rule should be produced. If, as the government asserts, these drawers contain files relating to other grand jury investigations, defendants, of course, have no right of access to these documents. Finally, the government has indicated that it will produce for defendants' inspection documents relating to the financial and compensation records of Meade Electric Co., subject to Meade's right to move for a protective order.

▆ Defendants have also objected to production by the government of an allegedly voluminous quantity of documents relating to construction bids for work at U.S. Steel, in connection with that section of Rule 16(a)(1)(C) requiring production of documents intended by the government to be used as evidence in its case-in-chief. Insofar as defendants request designation of exhibits by the government, we find no case law supporting this particular request. We find the case of *United States v. Sanders*, 266 F.Supp. 615 (W.D. La.1967) inapposite. It considered the appropriate remedy when a United States Attorney discovered one week before trial that not all 16(a)(1)(C) material had been turned over to defense counsel. That case nowhere indicates that the government must produce designated exhibits in advance of trial. Moreover, not only are defendants familiar with their own firm files, but we believe that the identification by the government of specific contracts it alleges were involved in the bid rigging will sufficiently aid the defendants in culling significant documents. The government has satisfied its obligation of production under Rule 16(a)(1)(C). *United States v. Litman*, 547 F.Supp. 645, 652 (W.D.Pa.1982).

### 3) Reports of Examinations and Trials

▆ Defendants have moved for production, pursuant to Rule 16(a)(1)(C) and (D) for any results or reports of any analysis or study made or used by an economist or statistician concerning bidding, bidding practices or pricing in connection with this case. We do not believe that economists' reports are the type of material to be disclosed pursuant to Rule 16, nor have we uncovered any authority supporting this proposition. We will therefore deny this request.

### 4) Evidence Favorable to Defendants and Brady Material

Pursuant to Fed.R.Crim.P. 16(a)(1)(C), Local Rule 24.4(a)(6) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), defendants have moved for books, papers or documents within the possession, custody or control of the government "which are material to the preparation of the defense of defendants or which are favorable to defendants...." Specifically, the information sought includes 1) testimony, statements, or memoranda of interviews of any present or former employee of the corporate defendants, indicating the employee did not know of any illegal acts; 2) testimony, statements, or memoranda of interviews of any present or former employee of United States Steel reflecting that the person believed there was nothing illegal or improper with respect to the contracts defendants performed; 3) memoranda of interviews with United States Steel employees containing exculpatory statements with regard to defendants; and 4) interview memoranda of any person likely by their position to have knowledge

of the scheme who denied having such knowledge.

In addition, defendants seek evidence in possession of the government which is favorable to the defendants, including documents showing materially inconsistent statements by witnesses the government intends to call at trial, and information regarding favorable treatment conferred by the government on witnesses it intends to call at trial. Finally, defendants seek written statements of all persons who have knowledge of the case, or who have been interviewed in connection with the case, who the government does not expect to call as witnesses, and all documents submitted to the government regarding alleged bid rigging in Western Pennsylvania which are not United States Steel documents, on the theory that these documents may have information favorable to the defendants.

The Court of Appeals for the Third Circuit recently summarized the obligations of the prosecution as established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967). *United States v. Higgs,* 713 F.2d 39 (3d Cir.1983). The court emphasized that *Brady's* requirement of disclosure of exculpatory evidence "applies both to materials going to the heart of defendant's guilt or innocence and to materials that might well alter the jury's judgment of the credibility of a crucial prosecution witness" (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Gengler,* 574 F.2d 730, 735 (3d Cir.1978); *United States v. McCrane,* 547 F.2d 204, 207–08 (3d Cir.1976); *accord, Perkins v. LeFevre,* 691 F.2d 616, 619 (2d Cir.1982); *United States v. Allain,* 671 F.2d 248, 255 (7th Cir.1982); *United States v. Bruner,* 657 F.2d 1278, 1288 & n. 13 (D.C.Cir.1981)), *United States v. Higgs,* 713 F.2d 39 at 41.

 If the evidence is exculpatory, *Brady* only requires that *material* evidence be disclosed by the prosecution. In

*United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) the Supreme Court analyzed the requirements of materiality in three different situations. *Id.* at 103, 96 S.Ct. at 2397. The second situation,[2] and the one most applicable here, is when the defendant has made a specific request for information in the government's possession. The test for materiality set out by the Court was whether the "suppressed evidence might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2397. Only if exculpatory evidence meets the appropriate test of materiality does the due process clause impose upon the prosecution the duty to disclose that information to a defendant. *United States v. Higgs, supra,* 713 F.2d 39 at 42.

 The government states in its Response and Opposition to Defendants' Joint Motion to Compel Discovery that it has produced all favorable evidence and all *Brady* material to the extent that it exists and is not covered by Fed.R.Crim.P. 16(a)(2) or (3) or the Jencks Act, 18 U.S.C. § 3500. Where the government states in good faith that it has turned over all *Brady* material in its possession, *see* Response and Opposition of the United States to Defendants' Joint Motion to Compel Discovery at 28, that declaration is enough to satisfy a court of good faith disclosure under *Brady. Archer v. United States,* 393 F.2d 124, 126 (5th Cir.1968); *United States v. Deerfield Spec. Papers, Inc.,* 501 F.Supp. 796, 819 (E.D.Pa.1980). The government has made such a statement with respect to requests (a), (c), (d), (f), (g), (h), (j), (k), (*l*), (m), (n), and (p). Requests (b) and (c) call for testimony, statements, or interview memoranda of present or former United States Steel employees "which reflect that the person believed there was nothing illegal or improper in any aspect of the contracts." Defendants here try to prove a proposition by the converse. We agree with the

---

2. The first situation arises when the prosecution knowingly uses perjured testimony. In this situation, a conviction must be overturned if there is a reasonable likelihood that the false testimony could have affected the jury's verdict. 427 U.S. at 103, 96 S.Ct. at 2397. The third situation arises when the defendants make a general request, or no request for exculpatory material. In these cases, disclosure is required only "if the omitted evidence creates a reasonable doubt that otherwise did not exist." 427 U.S. at 112, 96 S.Ct. at 2401.

government that in the case of a bid rigging conspiracy, the fact that certain employees of United States Steel were unaware of the conspiracy is not exculpatory or favorable to the defendant. Further, Fed.R.Crim.P. 16(a)(3) bars defendants from testimony given by United States Steel employees to the grand jury, while 16(a)(2) forbids defendants access to government memoranda. Courts have consistently held that *Brady* was not intended as a discovery device. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Frick,* 490 F.2d 666, 671 (5th Cir.1973); *United States v. Deerfield Spec. Papers, Inc.,* 501 F.Supp. 796, 818–19 (E.D.Pa.1980); *United States v. Leta,* 60 F.R.D. 127, 131 (M.D.Pa. 1973). We will therefore deny defendants' requests (b) and (c), and similarly, request (e).

■ With respect to request (i) we believe defendants are in possession of information relating to occasions when they submitted bids lower than alleged co-conspirators. We believe that request (o) regarding statements inconsistent with anticipated trial testimony falls under Jencks Act material. Defendants have a right to such material after the witness has testified. We would note that *Brady* materials are exculpatory, and mere inconsistence of statements of a government witness with what may be testified to at trial stretches the *Brady* rationale far beyond its logical reach. *United States v. Osticco,* 563 F.Supp. 727, 729 (M.D.Pa.1983).

5) *Statements of Trial Witnesses*

■ Pursuant to the Jencks Act, 18 U.S.C. § 3500, defendants have requested that the government provide them, before trial, with all statements in the possession of the government as well as transcripts of grand jury testimony of all persons the government intends to call at trial. As we have previously stated, we believe the language of the Jencks Act to be mandatory. "In any criminal prosecution brought by the United States, no statement ... made by a Government witness ... *shall* be the subject of a subpoena, discovery or inspection until said witness has testified on direct examination...." (emphasis supplied). 18 U.S.C. § 3500. *See United States v. Harris,* 458 F.2d 670 (5th Cir.), *cert. denied,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972); *United States v. Litman,* 547 F.Supp. at 652 (W.D.Pa.1982); *United States v. Frumento,* 405 F.Supp. 23, 33 (E.D.Pa.1975). While it is our policy always to encourage the government to provide such requested information before trial, we will not order early disclosure. *United States v. Murphy,* 569 F.2d 771 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978).

### III. *Defendants' Motion for Disclosure of Matters Occuring Before the Grand Jury*

Pursuant to Fed.R.Crim.P. 6(e)(3)(C), defendants have filed a joint motion for an order authorizing and compelling disclosure of matters before the Pittsburgh grand jury. Defendants seek 1) all materials excised from grand jury transcripts; 2) a list of other grand jury transcripts submitted to the Pittsburgh grand jury; 3) Pittsburgh grand jury transcripts shown to other grand juries; 4) comments made by the United States Attorney to the grand jury; 5) any untranscribed comments; 6) a list of persons shown documents; 7) any applications for orders authorizing transfers. The requests are made pursuant to three allegations made by defendants, namely, that 1) the transfer of documents to the Western District of Pennsylvania was without the requisite court order, 2) subpoenaed documents were disclosed to parties other than those who produced them; and 3) government counsel made prejudicial and inflammatory remarks to grand jurors regarding a witness' invocation of his Fifth Amendment privilege. The relief requested seems designed to allow defendants to inquire into whether other "improprieties" took place, which, we assume, might cumulatively provide defendants with material supporting a motion to dismiss the indictment. In the alternative, defendants have requested the Court to conduct an *in camera* review into these matters.

Rule 6(e)(3)(C) provides for disclosure of matters occurring before the grand jury a) when directed by a court in connection with judicial proceedings, and b) upon a showing by defendant that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. Fed.R.Crim.P. 6(e)(3)(C)(i) and (ii). We feel the allegations of impropriety made by defendants do not satisfy their burden under the Rule and we will, therefore, deny the motion.

The standard for disclosure of matters occurring before the grand jury in the Third Circuit is set out in *United States v. Budzanoski*, 462 F.2d 443 (3d Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972): "[T]here may be pretrial discovery of the testimony of a witness when it relates to the dismissal of the indictment, or upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." *Id.* at 454 (citation omitted). As to the standard of conduct necessary for a court to authorize disclosure of transcripts relevant to the issue of dismissal of the indictment, the Court of Appeals for the Third Circuit has held that such disclosure is appropriate when "the record already show[ed] significant improprieties...." *United States v. Serubo*, 604 F.2d 807, 818 (3d Cir.1979). Should a defendant make the required showing under 6(e)(3)(C)(ii), this showing of a substantial likelihood of gross prejudicial irregularities serves to satisfy the "particularized need" standard of 6(e)(3)(C)(i). *United States v. Frumento*, 405 F.Supp. 23, 33 (E.D.Pa.1975).

It has further been held, however, as a limiting factor, that

> grand jury proceedings generally are accorded a presumption of regularity, and mere suspicions of impropriety will not justify intrusion into the confidentiality of the proceedings. Requests for inspection of grand jury matters must be bottomed on more than the mere belief that improper conduct has occurred and that discovery will verify this belief.

*United States v. Boffa*, 513 F.Supp. 444, 496 (D.Del.1980). *Accord, United States v. Deerfield Specialty Papers, Inc.*, 501 F.Supp. 796, 816 (E.D.Pa.1980); *United States v. Braunstein*, 474 F.Supp. 1, 11 (D.N.J.1978); *United States v. Tedesco*, 441 F.Supp. 1336, 1344 (M.D.Pa.1977).

With respect to defendants' first allegation regarding improper transfer of documents without court order, the copy of the court order authorizing transfer of documents from one grand jury to another was produced to this court, thus satisfying us that the allegation was baseless.

The second allegation is that the government disclosed documents to certain parties who did not produce them. It is unclear to this Court on the basis of defendants' motion whether the "documents" were subpoenaed by a grand jury, and if subpoenaed, by which grand jury. *Compare* Defendants' Motion for Disclosure, at 4 ("Documents subpoenaed by grand juries in various jurisdictions ...") *with id.* at 5(ii) ("... were shown records and documents *apparently* subpoenaed from various defendants herein.") (emphasis added). Further, defendants, in support of this allegation, list two separate "occurrences": 1) that at an interview with two Justice Department attorneys, the interviewer, with counsel present, was shown "four or five folders relating to U.S. Steel bids and questioned ... concerning those bids. The folders appeared to be (sic) documents which would have come from U.S. Steel and were not the files supplied by [the interviewee]," Appendix A to Defendants' Motion for Disclosure of Matters Occurring before the Grand Jury (sealed); and 2) that "Richard Perrott of Lord Electric Company was displayed various documents obtained from other defendants herein in connection with Perrott's appearance before the grand jury sitting in the District of Columbia in November, 1982."

With respect to 1) *supra*, it is unclear whether defendants are arguing that the documents shown to the interviewee, among other possibilities, were a) U.S. Steel documents; b) documents of other companies in the possession of U.S. Steel. It does seem clear that the identity of the documents was not clear to the affiant, the

interviewee's counsel. We see nothing improper in the foregoing scenario. First, since it is unclear what the documents were, and since their identity seems purely speculative, this Court has no idea what defendants allege was being disclosed. Following from this, defendants have shown no evidence that the documents shown to this particular interviewee, regardless of their identity, were subpoenaed by or used by any grand jury in any way. Finally, even *assuming* these documents were subpoenaed by or presented to the grand jury in the Western District of Pennsylvania, (a critical fact) clear Third Circuit authority holds that "[t]he mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of 6(e)." *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980). In this circuit, a document becomes a "matter occurring before the grand jury" when it has been prepared especially for the grand jury, as with a summary for grand jury use. *See In re Grand Jury Matter*, 697 F.2d 511 (3d Cir.1982). *Accord, In re Special February 1975 Grand Jury*, 662 F.2d 1232, 1244 (7th Cir.1981) ("Only those subpoenaed documents should be subject to Rule 6(e) which when reasonably considered in the context of the particular grand jury investigation are determined by the trial court to reveal some secret aspect of the grand jury investigation"), *aff'd sub nom. United States v. Baggott*, — U.S. —, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). *But see In re Grand Jury Disclosure*, 550 F.Supp. 1171, 1177 (E.D.Va.1982) (documents subpoenaed by grand jury are matters occurring before grand jury).

We note that most cases concerning disclosure and alleged improper disclosure arise pursuant to requests for documents by persons outside the grand jury process, *see, e.g. In re Grand Jury Investigation, supra; United States v. Stanford*, 589 F.2d 285 (7th Cir.1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir.1960). In such cases, the party requesting the documents has sought information relating only to the documents themselves, with "no interest in the grand jury proceedings except for the somewhat fortuitous occurrence that that body had, *for a different purpose*, previously acquired custody over the records that it now seeks." *In re Grand Jury Investigation*, 630 F.2d 996, 999 (3d Cir.1980). In cases such as these, the Court must scrutinize the request and the purpose for which the documents are sought in order to ascertain whether the party seeks the information for its own intrinsic value rather than to learn what took place before the grand jury. *See United States v. Interstate Dress Carriers*, 280 F.2d at 54. *United States v. Tager*, 638 F.2d 167 (10th Cir.1980) cited by defendants, involved disclosure of grand jury transcripts, *clearly* "a matter occurring before the grand jury." Memorandum in support of Defendants' Motion for Disclosure of Matters Occurring before the Grand Jury at 10.

We might be more convinced about the validity of defendants' concerns for the grand jury process had defendants' documents been disclosed to nonparties. *United States v. RMI*, 599 F.2d 1183 (3d Cir. 1979), cited by defendants, involved a petition for mandamus, made by a nonparty to the action, from whom the government had subpoenaed documents. The government proposed to disclose *all* documents, pursuant to Rule 16, to defendants. NL Industries, Inc., a nonparty, moved for a protective order. The basis of its motion was that it was a competitor of certain defendants, and would have been prejudiced by the unprotected disclosure of its documents, which contained highly confidential and proprietary business information. *Id.* at 1185. In ordering the district court to consider the merits of the motion, the Court of Appeals for the Third Circuit observed that,

"[g]rand jury witnesses ought to be able to rely, generally, upon Rule 6(e) secrecy, with the reasonable assurance that matters *not material to the government's case* or *to the defense* will not be disclosed in connection with the trial of an

indictment. If such disclosure is actually necessary it must occur, but only with appropriate safeguards taken in the interest of preserving property rights in confidential business information. If the material is claimed to be confidential, and is in fact immaterial, the secrecy policies of Rule 6(e) ought to prevail.

*Id.* at 1190.

We find this case to be inapposite to the present situation which does not involve third parties wishing to protect their material business documents from disclosure. Secondly, with regard to Perrott being shown documents in conjunction with his appearance before the District of Columbia grand jury, we do not believe that the supervisory power of this Court extends to the conduct of grand juries in other jurisdictions.

■ Finally, defendants argue that the government abused the grand jury process by making inflammatory and prejudicial remarks to grand jurors regarding a witness' invocation of his Fifth Amendment privilege. We have reviewed the sealed transcript submitted to this Court by defendants regarding an exchange between government counsel and a witness before the grand jury sitting in Washington, D.C., and find no showing of substantial likelihood of gross or prejudicial irregularity. Nor is there any showing that this testimony was submitted to the Pittsburgh grand jury. In *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir.1979), the Court of Appeals for the Third Circuit, speaking of the supervisory power of the court to dismiss an indictment for prosecutorial misconduct, stated that,

> ... in the absence of any showing 'that the conduct [of the attorney] added substantive matters or was anything but an isolated incident unmotivated by sinister ends' or alternatively, that the practice of prosecutorial testimony was 'entrenched and flagrant,' we refused to exercise that power. (citing *United States v. Birdman*, 602 F.2d 547 (3d Cir.1979)).

Since we found no indication of actual prejudice to defendants, no evidence of what we would consider to be government abuse of the grand jury process, and no evidence that this exchange was anything but an isolated incident, we will deny defendants' motion to release the grand jury transcripts. We find this alleged "improper conduct" in no way comparable to the case cited by defendants in support of their motion. *Compare Serubo*, 604 F.2d at 818 (prosecutorial conduct extreme; graphic and misleading references by prosecution to Cosa Nostra "hatchet men"); *United States v. Hogan*, 712 F.2d 757 (2d Cir.1983) (misconduct flagrant and unconscionable and misled grand jury); *United States v. Cathey*, 591 F.2d 268, 273–74 (5th Cir.1979) (where inflammatory remark made as to defendants' culpability, it did not rise to constitutional proportions).

Finally, we doubt whether the allegations made by defendants would provide support for a motion to dismiss.

> Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented....

*United States v. Thompson*, 576 F.2d 784, 786 (9th Cir.1978). The relief sought by defendants, wholesale release of matters occurring before the grand jury, seems both in the nature of a fishing expedition and an attempt to discover into areas not permitted by the Federal Rules of Criminal Procedure. Similarly, we do not find that defendants have stated any "particular need" sufficient to warrant disclosure. We will deny defendants' motion for disclosure of matters occurring before the grand jury.

## IV. *Motion For Disclosure Regarding Alleged Prior Misconduct or Convictions*

■ Defendants have moved for an order requiring the government to disclose whether it intends to introduce or inquire into alleged prior misconduct or convictions of the defendants. Defendants argue that this information is necessary to avoid surprise and delay at trial; to enable defendants to make motions to suppress under

Fed.R.Crim.P. 12(b)(3); and to enable defendants to decide whether to move for prejudicial joinder under Fed.R.Crim.P. 14. Specifically, defendants have requested 1) the names and addresses of each witness the government would call; 2) a specific description of the conduct involved and at what point in its case the government would seek to introduce such evidence; 3) the date and place of the conduct and the names of participating persons; and 4) that the government furnish copies to the defendants of any exhibits to be offered.

Insofar as the defendants have requested disclosure of defendants' prior criminal records, the government has stated that it is unaware of any prior convictions of any individual defendants, and that should any such information be discovered, such information will be turned over to defendants.

Defendants have moved for the production of evidence admissible under Federal Rules of Evidence 404(b) and 608(b). Rule 404 allows introduction of evidence of other crimes, wrongs, or acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Rule 608 provides that specific instances of conduct of a witness, of attacking or supporting credibility, may not be proved by extrinsic evidence, but, under certain circumstances, at the discretion of the court, may be inquired into on cross-examination with regard to that witness' character for truthfulness or with regard to the character for truthfulness of another witness with regard to which the witness being cross-examined has testified.

Defendants are permitted by Fed.R. Crim.P. 12(d)(2) to request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16, subject to any relevant limitations prescribed in Rule 16. Rule 12(d)(2) states as its purpose, to afford an opportunity to move to suppress evidence under Fed.R.Crim.P. 12(b)(3).

We do not believe that 12(d)(2), limited to information normally discoverable under Rule 16, permits defendants access to the requested information. We have already addressed defendants' Rule 16 motion. In *United States v. Climatemp*, 482 F.Supp. 376, 391 (E.D.Ill.1979), *aff'd sub nom.*, *United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir.1983), *cert. denied sub nom. Fakter v. United States*, —— U.S. ——, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). The district court held that,

> ... [T]he purpose of Rule 12(d)(2) is to enable the defendant to file a motion to suppress not to provide him with information he normally could not discover under Rule 16.

*See also United States v. Lanier*, 578 F.2d 1246, 1254 (8th Cir.) *cert. denied*, 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978); Wright, *Federal Practice and Procedure, Criminal 2d* § 197.

 Under the scope of Rule 12(d)(2), the only information the government is required to turn over is 1) defendant's prior record, (Rule 16(a)(1)(B)); 2) documents and tangible objects the government intends to introduce as evidence in its case-in-chief, or which were obtained from and belong to the defendant (Rule 16(a)(1)(C)); and 3) any statement of the defendant (Rule 16(a)(1)(A)). We would, of course, encourage the government to exercise its discretion under Rule 12(d)(1) to disclose such evidence to defendants. We would note at this time the suggestion of the Court of Appeals for the District of Columbia in *United States v. Foskey*, 636 F.2d 517 (D.C.Cir.1980) that the government exercise its discretion under Rule 12(d)(1) and notify the defense before trial of its intention to introduce evidence of prior bad acts. The court noted that, with respect to the introduction of evidence under Rule 403 and 404(b),

> ... The district court, required to make on-the-spot decisions, does not have the luxury of engaging in the careful balancing we have undertaken here ... [t]here is a large measure of responsibility in the prosecutor to weigh the evidence independently: if its relevance is outweighed by the danger of unfairly prejudicing, confusing, or misleading the jury, it

should not be introduced. The assistant United States attorney must step back from his or her partisan role and make these determinations in an objective and fair-minded fashion before proffering the evidence.

*Id.* at 525–526. While we believe this early disclosure is to be encouraged, we know of no authority requiring the government to disclose such information.

### V. *Defendants' Motion to Strike Surplusage*

 Defendants have moved, pursuant to Fed.R.Crim.P. 7(d) for an order directing the government to strike surplusage from the indictment, on the grounds that it is immaterial, irrelevant, and likely to prejudice the jury. The statements referred to are those relating to the size of the defendant corporations, and statements relating to the amount of sales of the various defendant corporations. The government argues that the material is relevant in determining the jurisdiction of the Court in showing that interstate commerce was affected.

> It is held that a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard and only rarely has surplusage been ordered stricken.

Wright, *Federal Practice and Procedure, Criminal 2d* § 127 at 426–27. We do not believe that defendants have carried their burden in showing that the statements are irrelevant *and* prejudicial. *See, e.g. United States v. Ahmad,* 329 F.Supp. 292, 297 (M.D.Pa.1971).

### VI. *Defendants' Motion to Disclose Electronic Surveillance*

Defendants have moved, pursuant to 18 U.S.C. 2510 *et seq.* and Rule 16, for disclosure of any information in the possession, custody or control of the government concerning electronic surveillance of defendants. At argument, this motion was orally amended to include unindicted co-conspirators who are not employees of defendants. As the government has stated that there was no electronic surveillance in this investigation, we will not rule on this motion. If the government becomes aware at any time of such information, we will order it to release it to defendants, pursuant to its obligation under Rule 16(a)(1)(D).

An order consistent with this Opinion will be entered.