### In re: SEALED CASE

#### Nos. 00–5116, 00–5302.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 2000.

Decided Jan. 26, 2001.

Thomas W. Kirby argued the cause for appellants. With him on the briefs was Jan Witold Baran.

David Kolker, Attorney, Federal Election Commission, argued the cause for appellee. With him on the brief were Lawrence M. Noble, General Counsel, and Richard B. Bader, Associate General Counsel.

Before: EDWARDS, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In conjunction with an ongoing investigation of Appellants, the Federal Election Commission ("FEC" or "Commission") issued a subpoena to a third-party witness. When the witness refused to comply with the subpoena, the FEC petitioned the district court to enforce it. As part of the petition, the FEC included a number of exhibits providing information about the ongoing investigation. Immediately after the FEC filed its petition, Appellants moved to intervene and asked the court to place the enforcement action under seal pursuant to 2 U.S.C. § 437g(a)(12)(A). After a brief hearing, the district court denied Appellants' motion.

On appeal, Appellants argue that the district court abused its discretion in refusing to seal the case. They submit that § 437g(a)(12)(A) plainly protects the confidentiality of the subjects of ongoing FEC investigations. In response, the Commission contends that we do not have jurisdiction over this case because (1) Appellants

did not properly intervene and (2) the district court's denial of Appellants' motion was not a final, appealable judgment. The Commission also suggests that the statutory context, the legislative history, and an FEC regulation demonstrate that § 437g does not protect subjects' confidentiality in the context of subpoena enforcement actions.

For reasons more fully set out below, we conclude that this Court has jurisdiction over Appellants' case. Furthermore, we hold that the FEC failed to act in accordance with law by submitting the exhibits on the public record. The district court's decision is therefore reversed.

## I. BACKGROUND

Appellants are the focus of an ongoing FEC investigation concerning alleged violations of the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 *et seq.* During the course of its investigation, the FEC issued a subpoena to a third-party witness seeking information concerning Appellants' activities. After the third party declined to comply with the subpoena, the FEC decided to petition the district court for an order enforcing it. On March 16, 2000, FEC counsel notified Appellants that it planned to file the petition. That filing would include a number of exhibits containing information about the ongoing investigation. The next morning, Friday March 17, Appellants asked the FEC to refrain from disclosing the information or to file it under seal. The FEC refused and later that afternoon filed the petition and exhibits. Among the exhibits, the FEC included a copy of the complaint that prompted the investigation, an FEC prepared "Factual and Legal Analysis" detailing Appellants' alleged FECA violations, an FEC certification finding "reason to believe" that Appellants had violated FECA, and information referencing a separate FEC investigation that had no bearing on the subpoena enforcement action or the investigation of Appellants.

Within moments of the petition being filed, Appellants filed an Emergency Motion to seal the case. In support of this motion, Appellants argued that by placing the exhibits in the public record the Commission violated the broad confidentiality federal law affords the subjects of FEC investigations. After holding an abbreviated hearing that same afternoon, the district court denied Appellants' motion. Contending that public disclosure of the exhibits would be irrevocable, Appellants immediately moved for "an administrative ruling holding this matter" so that they could appeal the court's decision. The court denied this motion as well.

Fortunately for Appellants, the hearing ended after the district court clerk's office had closed for the weekend. As a result, the exhibits would not be available to the public until Monday afternoon, March 20. Appellants took advantage of "this fortuitous *de facto* stay of disclosure" by filing a notice of appeal. Appellants' Brief at 10. They also filed an emergency motion asking this Court to seal the case to permit the parties to file briefs on the merits of the appeal. Meanwhile, the district court issued two written orders addressing the same questions decided at the March 17 hearing. The first order denied Appellants' Emergency Motion. The second order denied what the court described as Appellants' "certification for interlocutory appeal." That same day, in response to Appellants' motion to this Court, we ordered the district court to place the case under seal pending our consideration of the merits of Appellants' motion. Subsequently, on June 7, the district court issued a final order enforcing the subpoena against the third-party witness. In due course, the FEC obtained the information it sought from the witness.

Appellants appeal from the district court's decision not to seal the subpoena enforcement action. They argue that because 2 U.S.C. § 437g(a)(12)(A) provides that information concerning an ongoing investigation "shall not" be made public, the

district court abused its discretion in denying their Emergency Motion.

## II. ANALYSIS

### A. Jurisdiction

The FEC asserts that we lack jurisdiction to consider this case. Its assertion is based on two separate premises. First, the FEC suggests that Appellants were not parties to the subpoena enforcement action and did not seek to intervene. *See* FED.R.CIV.P. 24(c). The FEC claims that because Appellants did not move to intervene, the district court did not deny any motion from which Appellants could appeal. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 896 & n. 5, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Second, the FEC submits that Appellants seek review of the district court's March 17 and March 20 orders, which simply declined Appellants' motion to place the case under seal. According to the FEC, these decisions are not appealable because they did not "end[ ] the litigation on the merits"—that is, they did not address the underlying subpoena enforcement action. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal quotes omitted). In relying on these premises, the FEC misconstrues the facts of this case and misapprehends the law in this area.

This Court unquestionably has jurisdiction to hear the present case. Appellants attempted to intervene, and the district court effectively—and erroneously—denied that attempt. Even if Appellants had not intervened, they could, and did, bring a simple motion to preserve their rights as contemplated in *United States v. Hubbard,* 650 F.2d 293 (1980). Under either approach, Appellants properly appealed from the district court's denial of their Emergency Motion pursuant to the collateral order doctrine.

Appellants' March 17 Emergency Motion expressly stated that Appellants "move[ ] for leave to intervene in the FEC subpoena enforcement action for the limited purpose of preventing unauthorized disclosures." Emergency Motion to Place Under Seal and for All Other Appropriate Relief at 2, *In re Sealed Case,* No. 00–MS–162 (D.D.C. Mar. 17, 2000). Both the district court and the FEC were aware of Appellants' desire to intervene. The March 17 Motion was entered on the district court's docket sheet as a motion "to intervene." Likewise, at the March 17 hearing, FEC counsel argued that Appellants were "not a party" and should not be permitted to intervene because they must "show harm to intervene." Transcript of Emergency Hearing at 18, *In re Sealed Case,* No. MISC. 00–162 (D.D.C. Mar. 17, 2000).

At the close of the hearing, the district court denied Appellants' motion to seal the record in the subpoena enforcement action. Three days later, the court issued a written order memorializing that decision. *See* Order, *In re Sealed Case,* No. 00–162 (D.D.C. Mar. 20, 2000). Although neither the court's oral nor written order specifically addressed Appellants' motion to intervene, they both denied the Emergency Motion as a whole, thereby effectively denying the intervention motion.

█ Under Rule 24(a) of the Federal Rules of Civil Procedure, an applicant may intervene as of right when it "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." FED. R. CIV. P. 24(a). An applicant does not possess a right to intervene, however, if its "interest is adequately represented by existing parties." *Id.*

█ Appellants readily meet the basic requirements necessary to intervene as of right. First, Appellants have a protected interest in the "transaction which is the subject of the action." As we explain below in more detail, they have a legally

cognizable interest in maintaining the confidentiality of the documents the FEC seeks to disclose in the public record. *See* 2 U.S.C. § 437g(a)(12)(A); *cf. United States v. AT&T*, 642 F.2d 1285, 1292 (D.C.Cir.1980) (explaining that by asserting the work product privilege to protect the confidentiality of certain documents a third party had asserted a "legal interest" of "direct and immediate character" (internal quotes omitted)).

Second, if the FEC's enforcement action were allowed to proceed on the public docket, then "as a practical matter" Appellants' ability to protect their confidentiality would be irrevocably impaired. Once the information included in the FEC's subpoena enforcement action is released, "the cat is out of the bag," and Appellants' statutorily guaranteed confidentiality would be forever lost. *In re Papandreou*, 139 F.3d 247, 251 (D.C.Cir.1998).

Finally, neither party to the enforcement action could have adequately represented Appellants' interest. Because the third-party witness was not the subject of the FEC's investigation, the witness was not entitled to the same legal protection afforded to Appellants. *See* § 437g(a)(12)(A). In addition, it is unclear on what grounds the witness even could have asked the court to place the case under seal. Obviously, the FEC refused to represent Appellants' interest and instead sought to run roughshod over that interest by seeking—unjustifiably and unexplainably—to place legally confidential information on the public record. The FEC chose this misguided course despite commands in its own governing statutes and regulations to keep ongoing investigations confidential. Because Appellants met the necessary criteria to intervene as of right, the district court erred by denying their motion to intervene. *See* FED. R.CIV.P. 24(a).

▬ Even if Appellants did not move to intervene under Rule 24(a) as the FEC now argues, as noted above, Appellants could, and did, bring a simple motion to preserve their own rights as contemplated in *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980). In *Hubbard*, this Court held that a third party may attempt to "maintain the confidentiality" of materials that are under the control of a court in a pending case by filing a motion initiating a distinct ancillary proceeding without intervening in the underlying case. *Id.* at 311. In *Hubbard*, the third party had a protectible "combination of property and privacy interests" in the materials controlled by the court. *Id.* at 307. Similarly, Appellants have a protectible interest in the confidentiality of the petition and exhibits the FEC filed in the district court. As we explain below, Congress explicitly established this interest with respect to the subjects of FEC investigations. *See* § 437g(a)(12)(A). Accordingly, under *Hubbard*, Appellants properly initiated an ancillary proceeding in the district court in order to protect this interest by moving to place the subpoena enforcement action under seal. *See Hubbard*, 650 F.2d at 311–12; *cf. United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir.1979) (discussing the "principle in permitting intervention for the assertion of claims of privilege when subpoenas are addressed to third parties").

▬ Whether the district court's order in this case denied Appellants' application to intervene or denied their *Hubbard* motion to place the subpoena enforcement action under seal, Appellants properly appealed that order to this Court pursuant to the collateral order doctrine. *See Hubbard*, 650 F.2d at 314; *AT&T*, 642 F.2d at 1296. Under that doctrine, an order is appealable if it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. 2454; *accord In re Sealed Case*, 192 F.3d 995, 999 (D.C.Cir.1999). In this case, the district court conclusively determined that the record would not be sealed, an issue completely separate from

the underlying subpoena enforcement action. *See In re Reporters Cmte. for Freedom of the Press*, 773 F.2d 1325, 1330 (D.C.Cir.1985). Because the public would have had immediate access to the record, the issue would have been effectively unreviewable by the time the district court had decided whether to enforce the FEC subpoena. *See Hubbard*, 650 F.2d at 314 ("[B]ecause public access to the documents at issue will to some extent irreparably damage the interests asserted, an order which has the effect of permitting such an invasion, as a practical matter, 'finally determine[s]' the claim."). Consequently, the district court's March 17 and March 20 orders are appealable under the collateral order doctrine. *See AT&T*, 642 F.2d at 1295–96; *cf. RMI*, 599 F.2d at 1186.

■ Alternatively, were we to conclude that the district court's March 17 and March 20 orders did not deny Appellants' motion to intervene, as the FEC suggests, the court's final June 7 order did so. That order ended all issues related to the enforcement proceeding, including the motion to intervene. *See Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). At that point, Appellants could properly appeal the final order, *see* 28 U.S.C. § 1291, which they did with a timely notice of appeal on July 24. *See* FED. R.APP. P. 4(a)(2).

Because our jurisdiction to hear this case is firmly established, we now turn our attention to the merits of Appellants' appeal.

B. The Merits of the Motion to Seal

■ The FEC is authorized to investigate potential violations of the Federal Election Campaign Act. *See* 2 U.S.C. § 437g(a)(2). When the FEC receives a complaint alleging FECA violations, it must provide written notification to the person accused of committing the violation and provide that person with an opportunity to respond to the accusation. *See id.* § 437g(a)(1). The Commission then determines, based on a vote of its members, if

there is "reason to believe that [the] person has committed" a FECA violation. *Id.* § 437g(a)(2). If this standard is met, the FEC investigates the alleged violation. *See id.* During the course of its investigation, the FEC is empowered to (1) order any person to submit written reports and answer questions, and (2) subpoena witnesses to testify or to produce documentary evidence. *See* 2 U.S.C. § 437d(a)(1), (3). Although the FEC has no power to enforce such orders and subpoenas, it may petition the district court for judicial enforcement. *See id.* § 437d(b).

■ Following its investigation, the Commission may vote to determine if there is "probable cause to believe that [the] person has committed" a FECA violation. § 437g(a)(4)(A)(i). If the Commission finds probable cause, it must attempt "to correct or prevent such violation by informal methods of conference, conciliation, and persuasion." *Id.* If the FEC's attempt at conciliation is unsuccessful, the Commission is authorized to enforce FECA through a civil suit brought in district court. *See id.* § 437g(a)(6)(A).

In the statutory section detailing the Commission's enforcement authority, FECA states that:

> Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

*Id.* § 437g(a)(12)(A). Similarly, the FEC's regulations provide that:

> [N]o complaint filed with the Commission, nor any notification sent by the Commission, nor any investigation conducted by the Commission, nor any findings made by the Commission shall be made public by the Commission or by any person or entity without the written consent of the respondent with respect to whom the complaint was filed, the

notification sent, the investigation conducted, or the finding made.

11 C.F.R. § 111.21(a).

Appellants point to these two provisions to argue that the district court abused its discretion in denying their March 17 Emergency Motion to seal the record of the subpoena enforcement action. According to Appellants, both the statute and the regulation permit disclosure of information concerning an ongoing FEC investigation only if the subject of that investigation provides written consent. Because Appellants did not consent, they contend that the district court erred in allowing the action and accompanying exhibits to be placed on the public record.

■■■■ Ordinarily, we review a district court's decision not to seal court records for abuse of discretion. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C.Cir.1996). In the general case, there is a "strong presumption in favor of public access to judicial proceedings." *Johnson v. Greater Southeast Community Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C.Cir. 1991). As we explained in *Hubbard,* this presumption can be overcome based on the following six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard,* 650 F.2d at 317–22).

The district court denied Appellants' March 17 Emergency Motion, treating it "sort of as a TRO request." Transcript of Emergency Hearing, *In re Sealed Case,* No. MISC. 00–162, at 12 (D.D.C. Mar. 17, 2000). In explaining its decision, the court recognized the general understanding that "there is a very strong presumption against filing pleadings under seal." *Id.* The court's decision rested on this presumption, as well as two other rationales. First, the district court concluded that the FEC's regulations permit it to file unsealed pleadings. *See id.* at 12–13 (citing 11 C.F.R. § 111.21(c)). Second, the court reasoned that there was not "any possibility of irreparable harm" because the press had already published several stories about the FEC's investigation of Appellants. *Id.* at 13.

■■■■ If this were a typical case, we would hold that the district court abused its discretion for treating Appellants' motion as "sort of a TRO request" and for failing to consider any of the *Hubbard* factors. That failure is particularly glaring in the present case, because, as we discuss below, both FECA and the FEC's regulations interpreting the statute create an extraordinarily strong privacy interest in keeping the records sealed absent a party's express written consent to the contrary. So strong is that interest that only rarely, if ever, might the remaining five *Hubbard* factors counterbalance the "strength of [the] . . . privacy interests asserted." Moreover, as we discuss below, the district court incorrectly interpreted the FEC's regulations—they (and, more importantly, the FEC's authorizing statute) plainly do not permit it to file pleadings relating to an ongoing investigation on the record. *See infra* at 667–68. Further, the existence of press reports about an investigation has no bearing on the issue raised by Appellants. *See infra* at 669–70.

■■■■ This is not a typical case, however, looking simply at whether court records should be sealed. Rather, the question before us is more properly posed as whether the FEC has the authority to file information concerning an ongoing investigation on the public record when it seeks to enforce a subpoena. *See* 5 U.S.C. § 706(2)(A). We hold that both 2 U.S.C. § 437g(a)(12)(A) and 11 C.F.R. § 111.21(a)

plainly prohibit the FEC from disclosing information concerning ongoing investigations under any circumstances without the written consent of the subject of the investigation. Accordingly, we conclude that the FEC failed to act in accordance with law when it sought to file the subpoena enforcement action on the public docket.

When interpreting a federal statute administered by an agency such as the FEC, we employ the familiar two-step inquiry of *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In the first step, we consider whether the statute speaks directly to the precise question at issue. If it does, "the inquiry is at an end; the court must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S.Ct. 1291, 1300, 146 L.Ed.2d 121 (2000) (internal quotes omitted). If the statute is silent or ambiguous concerning the question, we advance to the second step, deferring to the "agency's interpretation of the statute if it is reasonable and consistent with the statute's purpose." *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 643 (D.C.Cir.2000).

Likewise, we review an agency's interpretation of its own regulations with "substantial deference." *See, e.g., Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). As the Supreme Court recently stressed, however, judicial deference towards an agency's interpretation "is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 1663, 146 L.Ed.2d 621 (2000). The agency's interpretation thus "will prevail unless it is 'plainly erroneous or inconsistent' with the plain terms of the disputed regulation." *Everett v. United States*, 158 F.3d 1364, 1367 (D.C.Cir.1998) (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

In this case, the statute and regulation at issue are unambiguous and directly address the issue presented in this case. Their plain meaning therefore controls our decision. Section 437g(a)(12)(A) unequivocally states that any investigation "shall not be made public by the Commission or by any person without the written consent of the person ... with respect to whom such investigation is made." The FEC's regulations are equally clear: no FEC investigation or findings "shall be made public by the Commission or by any person or entity without the written consent of the respondent with respect to whom ... the investigation [is] conducted." 11 C.F.R. § 111.21(a). In other words, the Commission shall not make public an ongoing investigation or its findings concerning such an investigation without written consent. Neither the statute nor the regulation provide any exceptions to this rule. In light of these provisions' clear meaning, the Commission *shall not* place information about an ongoing investigation in the public record when it seeks to enforce a subpoena. By doing so, the Commission unquestionably violates Congress's mandate and its own regulations.

▇▇▇▇ The plain language of these provisions and the overall purpose and structure of the statutory scheme create a strong confidentiality interest analogous to that protected by Federal Rule of Criminal Procedure 6(e)(6). In both contexts, secrecy is vital " 'to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation.' " *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)). Given this analogy, there is a strong presumption that, even if the FEC possesses the power to file subpoena enforcement actions on the public record, such actions should be sealed. *Cf. In re Sealed Case*, 199 F.3d 522, 526 (D.C.Cir.2000) ("Unlike typical proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy.").

We cannot help but question why the FEC opposed Appellants' Emergency Motion and why it continues to fight the Motion on appeal. We would hope that its strident opposition is not politically motivated nor compelled by some vindictive desire to publicize allegations that are yet to be established. Nevertheless, the weakness of the FEC's position in this case invites the suspicion that its actions are externally motivated. Still, the FEC has proffered several arguments opposing Appellants' motion, and we must consider them.

First, the FEC argues that the confidentiality provision in § 437g(a)(12)(A) does not apply to the statutory section that authorizes the Commission to issue subpoenas and petition the district court for their enforcement. This argument is based on the fact that § 437g(a)(12)(A) refers only to "investigation[s] made under this section," while the subpoena authority is provided in a separate section, § 437d. At first blush, this argument seems colorable—indeed, it appears to be the strongest argument presented by the Commission. On closer inspection, however, we see that, like the other justifications proffered by the FEC, it is hollow.

Section 437g provides the basic scheme for the process the Commission must follow in enforcing FECA. It sets forth, for example, the steps the Commission must take in investigating an alleged violation. *See* § 437g(a)(1), (2). The Commission's power "to conduct investigations," however, is found in § 437d, *see* § 437d(a)(9), the same section that authorizes the Commission to issue subpoenas, *see id.* § 437d(a)(3), (4). In this case, the subpoena in question was issued as part of the FEC's ongoing investigation of Appellants. At oral argument, FEC counsel acknowledged that the Commission issues subpoenas as part of its investigations. This acknowledgment is completely inconsistent with the FEC's strained interpretation of § 437g. We cannot fathom why the FEC's issuance of a subpoena in further-

ance of an ongoing investigation would not be considered part of that "investigation" within the meaning of § 437g. When the FEC issues a subpoena as part of an investigation, § 437g mandates those subpoenas, like other components of the investigation, "shall not be made public." The FEC's position contemplates a bizarre result: the FEC would be obligated to keep a subpoena confidential until the target refused to comply, at which point the FEC could publicize the subpoena. Of course, there is no basis in the statute for this interpretation. Even if we assume that the FEC's argument was correct (which it is not) and the Commission could disclose the subpoenas themselves (which it cannot), the Commission would still lack the authority to divulge information pertaining to the underlying investigation as it has attempted to do here.

Second, the FEC contends that the legislative history of § 437g demonstrates that the Commission is authorized to disclose subpoenas issued in furtherance of an ongoing investigation. Specifically, the FEC directs us to two pieces of "evidence" from which it claims to have intuited Congress's intent. Initially, it asks us to consider the Conference Report for the 1976 Amendments to FECA, which states that § 437g(a)(12) is not violated "when actions taken carrying out an investigation lead to public awareness of the investigation." H.R. Conf. Rep. No. 94–1057, at 50 (1976), U.S.Code Cong. & Admin.News 1976, pp. 946, 965 *quoted in* Brief for the Appellee at 23. Next, it provides us with a clipped excerpt from the House of Representatives' debate over these amendments. During the debate the Manager of the bill stated, "The Commission ... sent nine investigators into Mr. Rose's district, with eight-column headlines saying that he had been charged with a flagrant violation of the election law." 122 Cong. Rec. 8,566 (1976) (statement of Rep. Hays) *quoted in* Brief for the Appellee at 22.

The FEC claims to have divined the meaning of an unambiguous statutory pro-

vision through this ambiguous legislative history. The FEC accomplishes this feat while acknowledging that the "legislative history does not mention judicial proceedings." We also note that it does not mention, or even allude to, FEC subpoenas. Still, the FEC relies on these two disconnected bits of legislative history to urge a reading of § 437g that calls for otherwise confidential information to lose all protection whenever the Commission files a subpoena enforcement action in the district court.

The limits on the Commission's authority—like that authority itself—are derived from statutory provisions, not from loosely worded fragments extracted from congressional reports and speeches. "The law, as it passed, is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself." *Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24, 11 L.Ed. 469 (1845). Here, the Act explicitly requires that the FEC "shall not" make public its ongoing investigations. Nothing in the Act can be rationally read to make an exception for subpoena enforcement actions. In the future, the Commission would be best served if its counsel did "not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

Third, the FEC suggests that it has promulgated a regulation, 11 C.F.R. § 111.21(c), that interprets § 437g(a)(12)(A). According to the regulation,

> Nothing in these regulations shall be construed to prevent the introduction of evidence in the courts of the United States which could properly be introduced pursuant to the Federal Rules of Evidence or Federal Rules of Civil Procedure.

11 C.F.R. § 111.21(c). The FEC declares that this provision "specif[ies] that the confidentiality provision is simply *not* applicable when evidence, like the exhibits to the Commission's enforcement petition, is filed in court." Brief for the Appellee at 27. The Commission asserts that its interpretation of this regulation and § 437g(a)(12)(A) is due substantial deference. *See FEC v. Democratic Senatorial Campaign Cmte.*, 454 U.S. 27, 37, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981).

■ The FEC's interpretation is not entitled to substantial—or any—deference here. We only defer to an agency interpretation if a statute or regulation is unclear. *See Brown & Williamson*, 120 S.Ct. at 1300; *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381. As explained above, the confidentiality provision in § 437g is clear. *See supra* at 667–68. So too is 11 C.F.R. § 111.21(c). This regulation simply states that the FEC's regulations do not "prevent the introduction of evidence in the courts" if that evidence could otherwise be properly introduced. § 111.21(c). This text plainly addresses only *what* evidence can be introduced, not *how* it should be introduced. There is only one way to read this regulation consistently with § 437g and § 111.21(a): the FEC can introduce evidence pursuant to the Federal Rules, but it cannot introduce evidence concerning an ongoing investigation on the public record—that is, any evidence may be introduced as long as it is placed under seal. The resulting procedure does not undercut the Federal Rules or adversely affect the FEC's ability to enforce subpoenas. *Cf. In re Motions of Dow Jones & Co.*, 142 F.3d 496, 501 (D.C.Cir. 1998) (discussing advantages of closing judicial proceedings ancillary to grand jury proceedings). Allowing the FEC to interpret § 111.21(c), an entirely unambiguous regulation, as it suggests "would be to permit the agency, under the guise of interpreting a regulation to create *de facto* a new regulation." *Christensen*, 120 S.Ct. at 1663.

■ The FEC's proposed interpretation would produce an absurd result: the FEC could not reveal information about an

ongoing investigation unless it did so in open court proceedings. This reading not only is "plainly inconsistent with the wording of the regulation," *LaRouche v. FEC,* 28 F.3d 137, 140 (D.C.Cir.1994) (internal quotes omitted), it also would undermine Congress's clear directive that the FEC "shall not" make information about investigations public. Section 111.21(c) merely states that the Commission's "regulations" do not prevent the introduction of evidence; it does not undercut the statute's mandate—nor could it. Agencies are not empowered to carve out exceptions to statutory limits on their authority. *Cf. Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.,* 29 F.3d 655, 671 (D.C.Cir.1994) (en banc) ("Were courts to presume a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." (emphasis in original)).

 The FEC further submits that its interpretation of the statute and regulation merits deference in light of its continued practice of filing subpoena enforcement actions on the public record. Even if the statute in question were ambiguous, such a supposed practice does not produce an agency interpretation to which we accord deference. *Cf. Christensen,* 120 S.Ct. at 1662. The deference afforded to an agency's interpretation of either a statute or a regulation presupposes that the interpretation is presented as part of notice-and-comment rulemaking or at least a reasoned decision-making process. *See id.;* *cf. Democratic Senatorial Campaign Cmte.,* 454 U.S. at 37–38, 102 S.Ct. 38 (addressing situation in which the Commission formally adopted an interpretation on three separate occasions). Choices made by FEC attorneys—without the Commission's ratification or acceptance—do not stand as the authoritative interpretation of the agency requiring deference.

 Finally, the FEC suggests that Appellants would not suffer any harm from the Commission breaching its duty of confidentiality because the press already has reported on some aspects of the investigation. This also is unconvincing. Stories in the media have no bearing on the confidentiality requirement Congress imposed on the FEC. It does not matter that the media has published some information concerning the investigation—the FEC has a straightforward duty not to disclose information about an ongoing investigation. Only the subject's written consent can relieve the FEC of this duty. *See* § 437g(a)(12)(A).

## III. CONCLUSION

For the foregoing reasons, the district court's decision is

*Reversed.*