**Julie TOWBIN and Gabrielle Michelle Stillman, Plaintiff(s),**

v.

**Peter ANTONACCI, et al., Defendant(s).**

No. 12–80069–Civ.

United States District Court, S.D. Florida.

Dec. 18, 2012.

---

West Codenotes

**Recognized as Invalid**
    West's F.S.A. § 106.08(1)(b)(2).

**Limited on Preemption Grounds**
    West's F.S.A. § 106.25(7).

———

James Kellogg Green, West Palm Beach, FL, Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Miami, FL, for Plaintiffs.

Charles M. Fahlbusch, Attorney General Office, Department of Legal Affairs, Fort Lauderdale, FL, for Defendants.

### *ORDER*

DAVE LEE BRANNON, United States Magistrate Judge.

THIS CAUSE is before the Court on a discovery dispute involving Plaintiff Julie

Towbin and Plaintiff Michelle Stillman's request for production of documents relating to campaign contributions made by, or through, unemancipated minors. The Court has considered the parties' arguments, supplemental briefing, and the record, and is otherwise advised in the premises. For the following reasons, the Court finds that Plaintiffs are entitled to the documents they seek from Defendants.[1]

## I. Background

This case involves alleged violations of the First Amendment rights of unemancipated minors. Plaintiffs, both of whom were unemancipated minors at the time they filed suit,[2] allege that their rights were violated when Plaintiffs, having identified candidates in state and local elections that they wished to support, were prevented from doing so by the fear that they would violate Fla. Stat. § 106.08(1)(b)(2)—which proscribes contributions by minors in excess of $100 to political candidates—and in so doing would face criminal prosecution and/or fines. Plaintiffs contend that, but for § 106.08(1)(b)(2), they would have made their desired contributions.

Plaintiffs now sue Defendants,[3] who are responsible for either investigating and prosecuting violations of state law, including election laws, that occur in Palm Beach County, or for investigating and determining whether campaign finance violations have occurred.[4] Plaintiffs allege that, while Defendants had the opportunity to advise Plaintiffs that § 106.08(1)(b)(2) would not be enforced against them if Plaintiffs contributed more than $100 to a political candidate, they did not, and, accordingly, curtailed Plaintiffs' First Amendment rights to make contributions in excess of $100 to political candidates

or committees. Plaintiffs successfully obtained a preliminary injunction against Defendants on August 7, 2012, enjoining enforcement of the challenged statute.

## II. Discovery Dispute

On November 29, 2012, the parties appeared before the undersigned to resolve a dispute about the discoverability of documents relating to campaign contributions made by, or through, unemancipated minors. Specifically, Plaintiffs requested "all documents from the Florida Elections Commission Defendants regarding any study, investigation, or proceeding involving: (1) contributions made by unemancipated minors, (2) conduit contributions made by a parent through his or her unemancipated minor child(ren), (3) contributions made in the name of children to defeat campaign contribution limits, and/or (4) contributions made in the name of unemancipated children to defeat campaign contribution limits."

Defendants identified 70 pages of documents as responsive to Plaintiffs' requests. However, Defendants objected to the production of these documents, contending that they were privileged, both as confidential under Fla. Stat. § 106.25(7) and as work product. Defendants contend that they cannot produce the documents Plaintiffs seek because § 106.25(7) mandates that complaints filed with the FEC, as well as the information contained therein—including the identities of the complainant, the target of the complaint, and subsequent investigations—be kept confidential. There are criminal penalties for violating this statute. The crux of this discovery dispute is whether the Court should create a new federal common law privilege

---

1. Defendant Peter Antonacci is the State Attorney for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Defendants Tim Holladay, Barbara A. Stern, Sean Hall, Leslie Scott Jean–Bart, Alia S. Faraj–Johnson, G. Gregory King, E. Leon Jacobs, Jr. and Brian M. Seymour are duly appointed members of the Florida Elections Commission ("FEC Defendants").

2. Plaintiff Julie Towbin filed the initial complaint through her mother and next friend, Debbie Hammer. The complaint was subsequently

amended to add Plaintiff Gabrielle Michelle Stillman, who brings this suit through her mother and next friend, Margaret A. Presutti. Plaintiff Towbin turned 18 in September 2012; Plaintiff Stillman is 14.

3. Plaintiffs sue Defendants in their official capacities.

4. Plaintiffs contend that the FEC Defendants "regularly investigate and administratively prosecute violations of § 106.08."

by extending the state privilege created by § 106.25(7) to federal question cases.

## A. Initial Arguments

■ In support of their position, Plaintiffs argue that Fed. R. Civ. Pro. 26 permits discovery of any information that is relevant to a claim or defense at issue unless the information sought enjoys a specific privilege. They contend that the documents they seek are highly relevant to their case because they pertain to "any study, investigation, or proceeding involving" campaign contributions made by or through unemancipated minors, and that Defendants' claim of privilege, which exists in state, but not federal, law, should not be entertained. They contend that only privileges recognized by federal courts can overcome Defendants' obligation to disclose under Rule 26.

Plaintiffs argue that Defendants' attempt to apply the state-created privilege delineated in § 106.25(7) ultimately must fail. Plaintiffs contend that the statutory privilege is inapplicable to the instant matter because state law may not "modify or impose an additional privilege in a claim based on a federal question in a federal court." Fed. R.Evid. 501; *see also American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1342–43 (5th Cir.1981).[5] Plaintiffs argue that state statutory rules of privilege are "looked upon with disfavor" in federal courts. *Hancock v. Hobbs*, 967 F.2d 462, 466–67 (11th Cir.1992). Plaintiffs argue that there is a "special danger" in "permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Finch*, 638 F.2d at 1343–44. They also argue that courts have ordered documents produced even when production constituted a state criminal offense. *See Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1060–61 (7th Cir. 1981).

Plaintiffs concede, however, that courts may—and, the Court notes, often do—recognize and apply state privileges. Plaintiffs contend that, in this circumstance, the Court should use the balancing test established by the Fifth Circuit to determine if a state privilege should be applied to a federal case. This two-part test balances "the policies behind the privilege against the policies favoring disclosure." *Finch*, 638 F.2d at 1343.

■ The first step of *Finch* test examines whether the fact that the courts of Florida would recognize the privilege is reason enough for federal courts to recognize it. *Id.* Plaintiffs argue that, as in *Finch*, the Court should answer this question in the negative, since applying a state privilege often hinders the "special federal interest in seeking the truth." *Id.* at 1344. Plaintiffs further argue that the Court has a strong interest in seeking the truth in this case, since Plaintiffs are challenging Florida's statutory cap on political contributions by unemancipated minors as a First Amendment violation, and the federal interest in seeking the truth is especially strong when federal questions or issues play a predominant role in the litigation. *Id.*

■ The second step examines whether the privilege is "intrinsically meritorious." *See Id.* at 1343. In evaluating the intrinsic merit of a privilege, a court examines whether:

1) communications "originate in a confidence that they will not be disclosed";

2) confidentiality is essential "to the full and satisfactory maintenance of the relation between the parties";

3) the relation is "one which in the opinion of the community ought to be sedulously fostered"; and

4) the "injury that would inure to the relation by the disclosure of the communications [is] greater than the benefit thereby gained for the correct disposal of litigation."

*See Id.* at 1344. Plaintiffs argue that Defendants cannot meet these four factors, and, thus the state privilege created by § 106.25(7) should not be recognized. *Id.*

Finally, in briefly addressing Defendants' work product argument, Plaintiffs contend that Defendants have failed to give an expla-

---

**5.** The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981, in *Bonner v.* *City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

nation regarding why the material Plaintiffs seek is covered by work product privilege, and take issue with Defendants' attempt to defend is claims of privilege with the assertion that providing Plaintiffs with an explanation would itself violate § 106.25(7).

Defendants, in turn, contend that they cannot disclose the materials sought by Plaintiffs because to do so would be a criminal offense under § 106.25(7); they also contend that disclosure would "subject the complainant to the danger and chilling effect of having his or her identity revealed" and would subject the respondent "to the embarrassment and consequences of having his or her identity revealed prior to any probable cause decision being made." Defendants further cautioned that such disclosure would likely "reveal the identities of the investigators during an ongoing investigation, the identities of witnesses and the tactics and strategy of the investigation." Defendants also argued that violations of § 106.08 are crimes, and that investigations of any such violations should be considered documents that are part of an ongoing criminal investigation until such investigation is closed.

Defendants also urge the Court to look towards a similar federal provision, 11 CFR § 111.21, which they contended is essentially the same as the state provision at issue, since it reflects the Federal Election Commission's desire to protect similar information regarding its investigations. Defendants also argue that the 2 U.S.C. § 437g(a)(12)(A) levies fines against individuals who disclose similar information at the federal level, and argue that Plaintiffs are trying to deny states the right to extend privacy protections to its citizens that are simultaneously extended under federal law to U.S. citizens.

Defendants contend that, additionally, there is a federal interest in keeping pleadings relating to ongoing federal investigations off the record in order to protect innocent accused who may be exonerated from disclosure. *In re: Sealed Case*, 237 F.3d 657, 666–67 (D.C.Cir.2001). In that vein, Defendants contend that any information relating to ongoing investigations should be submitted under seal, if allowed at all. *Id.* at 669. Defendants further contend that in federal cases, the compilation of material "relating to speech or political activity for law enforcement purposes" requires a "separate First Amendment justification for publically disclosing the material," and urge a similar requirement at the state level. *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C.Cir.2003).

Finally, Defendants argue that the FEC could not receive and investigate complaints of election law violations without the confidentiality provisions of § 106.25(7), and, as such, the statute passes muster under the balancing test articulated in *Finch*. Defendants briefly argue that the court should apply work product privilege to the documents as well, arguing that documents compiled in accordance with § 106.25(7) are gathered to determine if there will be litigation, and, if so, what kind. Accordingly, Defendants argue, work product privilege applies.

### B.  *Supplemental Briefing*

Subsequent to the discovery hearing, the parties filed supplemental briefing at the Court's behest. In their briefing, Plaintiffs contend that the Court need not accord the dual concerns of comity and federalism any greater weight—by recognizing the privilege created by § 106.25(7)—than did the Fifth Circuit in *Finch* when it held that a state statute, created in a post-hoc attempt to hide records detailing state officials' misdeeds, did not create a federal evidentiary privilege. *Finch*, 638 F.2d at 1339, 1345.

Plaintiffs additionally argue that Defendants are incorrect in their contention that 11 CFR § 111.21 is the federal equivalent of § 106.25(7) merely because it establishes "similar confidentiality requirements for documents associated with investigations by the Federal Election Commission." 11 CFR § 111.21, Plaintiffs point out, includes along with the confidentiality clause the proviso that "nothing in these regulations shall be construed to prevent the introduction of evidence in the courts of the United States which could properly be introduced pursuant to the Federal Rules of Evidence or Federal Rules of Civil Procedure." 11 CFR § 111.21(c). Plaintiffs contend that Defen-

dants fail to identify a compelling reason why the FEC's confidentiality needs extend beyond those of its federal equivalent, and urge the Court to decline recognition of a privilege created by § 106.25(7) because its federal counterpart "explicitly declines to create an evidentiary privilege."

Plaintiffs also take issue with Defendants' arguments that maintaining the secrecy of ongoing investigations trumps Plaintiffs' right to discovery. Plaintiffs argue that *In re: Sealed Case* involved the Federal Election Commission's attempt to enter documents relating to ongoing investigations into the record, whereas in this case, Plaintiffs seek the documents not to publically release the identities of the complainants and witnesses, but instead to uncover potentially admissible evidence regarding a statute being challenged on constitutional grounds. Moreover, Plaintiffs contend, while the *In re: Sealed Case* court's decision ultimately prevented the Federal Election Commission from "entering sensitive documents regarding ongoing investigations of violations of election laws into the public record," the case did not completely bar those documents from being entered into evidence (or, as the Court notes, bar those documents from being produced); rather, it required the documents be submitted under seal. 237 F.3d at 669.

Plaintiffs further contend that the facts in *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n,* 333 F.3d 168, 179 (D.C.Cir.2003) are far afield from the facts in the instant case. In that case, Plaintiffs argue, the Federal Election Commission had a policy which allowed the public easy access to the Commission's investigation documents, including the American Federation of Labor's internal documents revealing the union's political activities, which were protected under the First Amendment. In the instant case, Plaintiffs argue, disclosure of the documents do not implicate any heightened First Amendment scrutiny, as suggested by Defendants; rather, Plaintiffs seek disclosure of documents to effectively litigate their First Amendment claim.

Plaintiffs also argue that the Court should not use the confidentiality provision of § 106.25(7) to create a federal privilege because the provision is constitutionally suspect. Plaintiffs argue that this statute is an attempt to implement content-based restrictions on speech by creating confidentiality requirements backed by the threat of criminal sanctions. Plaintiffs argue that federal courts in Florida, as well as the Eleventh Circuit, have struck down similar attempts as unconstitutional under the First Amendment. Plaintiffs also contend that the Supreme Court has found Florida's attempt to use confidentiality requirements to criminalize conduct associated with First Amendment activity unconstitutional. Plaintiffs also contend that, of these cases, a number involved statutes with similar confidentiality requirements, including the prohibition against revealing information related to an investigation.

Finally, Plaintiffs contend that any claim by Defendants that the documents cannot be produced because discovery could disclose information related to an ongoing investigations of § 106.08(1)(b)(2)—the statute at issue—is moot. Plaintiffs argue that since Defendants have been enjoined from giving any force or effect to § 106.08(1)(b)(2), this precludes them from investigating violations of that statute as well. Plaintiffs argue that, given the injunction, Defendants cannot have a compelling interest in maintaining the confidentiality of investigations into violations of § 106.08(1)(b)(2). Plaintiffs further contend that, to the extent Defendants might argue that the documents relate to investigations of violations of Fla. Stat. § 106.08(5), which prohibits political donations in the name of others, such arguments only bolster Plaintiffs' claim that the state lacks a compelling interest in enforcing a $100 maximum on campaign contributions of unemancipated minors. Plaintiffs contend that because "the type of conduct that the state argues justifies restrictions on campaign contributions of unemancipated minors can be investigated through the state's ban on donating in the name of others, the state lacks a compelling interest in restricting the first amendment rights of minors and has failed to narrowly tailor any such restrictions."

Ultimately, Plaintiffs contend they are entitled to complete, un-redacted copies of all

documents responsive to their discovery request. However, Plaintiffs state that they would be satisfied if Plaintiffs' counsel were provided un-redacted copies with a directive to the parties to eliminate the names and addresses of complainants and persons subject to investigation. Plaintiffs contend that these redacted copies could be filed with the Court, though request that the Plaintiffs be free to contact potential witnesses revealed by the documents.

Defendants, in turn, reiterate their position that § 106.25(7) is analogous to 11 CFR § 111.21, and, thus, consistent with federal law and entitled to recognition as a federal privilege. Defendants argue that the lack of conflict between state and federal law requires the Court, in the spirit of comity, to apply state privilege law. Fed.R.Evid. 501; *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 688 (E.D.Cal.1993). Defendants contend that "when state law privilege law is consistent, or at least compatible, with federal privilege law, the two should be read together in order to accommodate the reasonable expectation of the state's citizens." *Id.*

Defendants argue that little weight should be given to the Fifth Circuit's decision in *Finch*, since, unlike in the instant case, federal and state law were not aligned. Defendants contend that since *Finch* dealt with allegations of § 1983 violations by public officials, and since the documents at issue dealt directly with the alleged wrongdoings of the public officials, the court did not apply the state evidentiary privilege. Rather, they argue, since there was no analogous federal privilege, the court examined the state claim of privilege against the purpose of Section 1983 litigation in general. The lack of federal privilege, they contend, coupled with the plaintiff's allegations of unconstitutional affirmative conduct on the part of state actors, informed the court's decision not to extend the state privilege. Defendants contend that *Finch* is distinct from the instant matter, which does not allege unconstitutional conduct on the part of state actors, but instead challenges "the constitutionality of a state statute which was never applied to them." Defendants also seemingly argue federal and state law cannot be inconsistent in this case, since federal law is silent on the issue of regulation of campaign contributions by minors.

Defendants also argue that *In re Hampers*, 651 F.2d 19 (1st Cir.1981) deals with a set of facts more aligned with the instant case than *Finch*. *In re Hampers* involved a court's recognition of a state privilege that protected tax information because that information was protected under federal law as well. *Id.* at 23–24. Defendants argue that *In re Hampers*, unlike *Finch*, dealt with aligned federal and state interests, and that the instant case is on par with *In re Hampers* because it deals with confidentiality provisions in both federal and state law regarding complaints of election violations.

Defendants further argue that § 106.25(7) and 11 CFR § 111.21 are alike in form and purpose, and that federal statutes, like the state statute at issue, recognize the importance of protecting the identity of complainants and complaint targets. *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 177 F.Supp.2d 48, 56 (D.D.C.2001) *aff'd* 333 F.3d 168 (D.C.Cir. 2003). Defendants contend that such is the importance of this need that it outweighs any value Plaintiffs might glean from the information sought.

Finally, Defendants request that in the event the Court determines that Plaintiffs are entitled to the documents, the Court conduct an *in camera* inspection of the requested documents to determine which are relevant and which the Plaintiffs have a substantial need for and cannot be obtained elsewhere. Defendants request that any documents for which Plaintiffs show they have a substantial need be submitted under seal, and that the Court order Plaintiffs' counsel to maintain the confidentiality of the existence or content of any such documents released to them and prohibit counsel from releasing them to any third parties.

## C. *Analysis*

■ Having considered the parties' arguments, the Court finds the Plaintiffs' arguments persuasive. Fed. R. Civ. Pro. 26 permits discovery of any information that is relevant to a claim or defense at issue unless

the information sought enjoys a specific privilege. Fed.R.Civ.P. 26(b)(1). "Relevancy" under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters than could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). The Court agrees with Plaintiffs that the documents they seek are highly relevant to their case because they pertain to "any study, investigation, or proceeding involving" campaign contributions made by or through unemancipated minors.

The Court also agrees that creating a new federal privilege by recognizing Fla. Stat. § 106.25(7) would be inappropriate. Creating a new federal evidentiary privilege is disfavored. *Hancock*, 967 F.2d at 466–67. Moreover, while there is a corollary federal provision, 11 CFR § 111.21, which establishes certain confidentiality requirements for documents associated with investigations by the Federal Election Commission, that provision specifically declines to extend the confidentiality contemplated to an evidentiary privilege. 11 CFR § 111.21(c) ("nothing in these regulations shall be construed to prevent the introduction of evidence in the courts of the United States which could properly be introduced pursuant to the Federal Rules of Evidence or Federal Rules of Civil Procedure."). Thus, while the Court takes the Defendants' point that the two are "almost identical in form and purpose," the key word is *almost*. The difference between the two provisions is material: the federal provision does not create an evidentiary privilege, while the Florida statute does. And, indeed, the Court agrees with Plaintiffs that Defendants have not shown that Florida's confidentiality needs that outstrip those of the United States.

Moreover, the *Finch* test factors, when applied to the facts of this case, weigh against extending the confidentiality privilege of § 106.25(7) into federal court. The first step of the analysis, which requires the Court to consider whether the fact that the courts of Florida would recognize the privilege is reason enough to recognize it, can be answered with a "no." *Finch*, 638 F.2d at 1343. The Court has a strong interest in seeking the truth in this case; it involves alleged First Amendment violations of minors, who, although minors, are still accorded constitutional protections. In light of the federal question at the heart of this case, applying the privilege created by § 106.25(7), which would preclude the production of documents dealing with violations of the very statute allegedly curtailing the Plaintiffs' First Amendment rights, would undoubtedly hinder the "special federal interest in seeking the truth." *Id.* at 1344.

The second step of the analysis examines whether the privilege is "intrinsically meritorious." *See Id.* at 1343. In evaluating the intrinsic merit of a privilege, a court examines whether:

1) communications "originate in a confidence that they will not be disclosed";

2) confidentiality is essential "to the full and satisfactory maintenance of the relation between the parties";

3) the relation is "one which in the opinion of the community ought to be sedulously fostered"; and

4) the "injury that would inure to the relation by the disclosure of the communications [is] greater than the benefit thereby gained for the correct disposal of litigation."

*See Id.* at 1344.

Regarding the first factor, the Court notes that while complaints made to the FEC are by and large "confidential," the provisions of § 106.25(7) allow the target of the investigation to disclose that he or she is being investigated. Thus, while the complainant might expect that no one within the FEC would disclose the communications, they cannot be said to expect absolute confidentiality. § 106.25(7) ("confidentiality may be waived in writing by the person against whom the complaint has been filed or the investigation has been initiated"). Accordingly, the communications do not unequivocally "originate in the confidence that they will not be disclosed."

Regarding the second factor, whether confidentiality is essential to the full and satis-

factory maintenance of the relation between the complainant and the FEC, the Court notes that confidentiality can very well add to the satisfactory maintenance of relations between parties. However, Defendants have not shown that confidentiality is essential to the relationship at issue. Moreover, the Court is not convinced that its decision to allow the discovery at issue, especially in this limited context of First Amendment litigation, is likely to vitiate the relationship between potential complainants and the FEC.

Regarding the third factor, the Court acknowledges that the relation between complainant and FEC is one which ought to be "sedulously fostered." However, the Court does not consider discovery of documents that may reveal practices contravening the First Amendment to be inapposite of this goal.

Finally, regarding the fourth factor, whether "the injury that would inure to the relation by the disclosure of the communications [is] greater than the benefit thereby gained for the correct disposal of litigation," the Court finds that any injury sustained to the relationship between the complainant and the FEC would not be so great as to outweigh the benefit gained by the courts, and the parties, by the correct disposal of litigation. It is important that questions of constitutionality, especially those involving First Amendment issues, be decided based on all the information available. Moreover, as discussed *supra*, the disclosure of the communications at issue is not unfettered; the Court is ordering disclosure in a limited forum.

Ultimately, the Court finds that the *Finch* test, as applied to the facts of the instant case, weighs against creating a new federal privilege; thus, the Court will not extend the state privilege delineated in § 106.25(7).

Regarding Defendants' work product argument, which received short-shrift in their briefing, the Court does not agree with Defendants' contention that documents prepared to determine whether litigation will occur are necessarily documents prepared "in anticipation" of litigation. Nor do Defendants offer any authority supporting this position. Thus, the documents at issue are not entitled to work-product privilege.

## III. *Conclusion*

Accordingly, the Court finds that Plaintiffs are entitled to the discovery they seek. However, as suggested by Plaintiffs, Plaintiffs' counsel is to be provided un-redacted copies, but any documents that Plaintiffs intend to file with the Court must eliminate the names and addresses of complainants and persons subject to investigation. Plaintiffs' counsel, however, may contact potential witnesses revealed by the documents, however. It is hereby

ORDERED that Defendants produce the documents they identified as responsive to Plaintiffs' Request to Produce on or before December 24, 2012.